WILLIAM J. HUBBARD, SR.,

*vs.*

FLORENCE HUBBARD.

*Husband and wife: wife's right to support; alimony.*

A wife has the right to look to her husband for support and
to maintain a bill in equity therefor, where, through no fault
of hers, they are not living together.                    p. 294

The mere fact that a wife has her husband arrested for non-
support, and has asked for police protection against him, does
not justify him in failing to make provision for her support.
                                                          p. 294

An allowance for alimony is subject to be increased or dimin-
ished, by the Court making it, according to the altered condi-
tions of the parties as they may from time to time exist.
                                                          p. 295

*Decided June 28th, 1917.*

Appeal from the Circuit Court of Baltimore City. (DAW-
KINS, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE,
BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CON-
STABLE, JJ.

*Harry C. Kalben* and *David Ash,* for the appellant.

*James Fluegel,* for the appellee.

STOCKBRIDGE, J., delivered the opinion of the Court.

On the 27th of May, 1915, a decree was passed in a case between the same parties as those who are parties to this record, upon a bill filed originally as a bill for alimony, and subsequently by amendment converted into a bill for divorce *a mensa et thoro*. Three days after the entry of the decree in that case an appeal was taken to this Court (127 Md. 617), and the case having been heard here the decree of the Circuit Court No. 2 of Baltimore City was affirmed on January 21, 1916.

Shortly following the decree of the Circuit Court No. 2 of Baltimore City, to which reference has just been made, namely, on July 1st, 1915, Mrs. Hubbard swore out a warrant for the arrest of her husband charging desertion and non-support. Mr. Hubbard was absent from the city at the time, and did not return to Baltimore until about the middle of that month. Immediately upon his return he surrendrred himself, and the case was set for a hearing on the 19th or 20th of July.

When the matter was taken up before the magistrate there appears to have been some discussion relative to a possible reconciliation between the parties, and without final action there, either upon the theory of a lack of jurisdiction on the part of the magistrate or for some other reason, the case was sent to the Grand Jury, which subsequently found an indictment. The criminal proceeding does not appear to have been pushed to a conclusion, but was stetted by the State's Attorney without prejudice to the assertion of the rights of the parties in an equity Court.

On September 28th, 1916, the bill of complaint in this case was filed. It contains three prayers: the first, for alimony *pendente lite* and permanent alimony; the second, for an injunction to restrain Mr. Hubbard from disposing of certain household effects and furniture; and third, the general prayer for relief.

The evidence consists largely of the testimony of the parties to this suit and is contradictory on material points. It

would be idle to attempt to reconcile their stories, or account for the discrepancies by any supposed lapse of memory. The alleged foundation for Mrs. Hubbard's suit is this; that some time during the month of July, 1915, or approximately two months after the dismissal of her former bill for a divorce, and after the hearing before the Magistrate of the proceeding instituted because of the non-support, Mr. Hubbard did return to the house on Madison avenue which belonged to the parties, and although not occupying the same room with his wife, did during some week or ten days take his meals or some of them with his wife and others, who were staying at the house, thereby effecting at least a partial reconciliation of the parties.

Mr. Hubbard, on the other hand, denies most emphatically that he ever took a meal at the house or staid in the house over night, and insists that the various witnesses who testified to his presence there were mistaken in their estimates of time by at least one year. He does admit that he paid a brief visit to the house for the purpose of getting some of his clothing, but insists that that was all, and that the total length of time that he was so in the house was very brief.

In the course of the examination it was admitted (Record, page 28) by the counsel for Mr. Hubbard that there was nothing to prevent him from going home. Of the conflicting statements made by Mr. and Mrs. Hubbard, there is no corroboration of Mr. Hubbard's version. On the other hand Mrs. Hubbard is supported by the testimony of the son of the parties, though apparently some animus existed between the father and son.

There is further corroboration from three apparently disinterested witnesses; a Mrs. Overley, who spent a considerable length of time in the house in 1915, and who details with particularity the events and actions of Mr. Hubbard in the house during that week or ten days, at the expiration of which he left and did not thereafter return.

Mr. and Mrs. Haas were neighbors, living on Madison avenue. Their testimony is to the effect that while neither

of them saw Mr. Hubbard in the house, yet Mrs. Haas saw him entering the house, and Mr. Haas saw him in the immediate neighborhood and had a short conversation with him.

The preponderance of testimony, therefore, is to the effect that after the dismissal of the prior bill there was at least a partial reconciliation of the parties, followed by Mr. Hubbard's leaving the home, and that he has not since returned to it.

Upon one point the evidence of the parties to the case is in entire accord; namely, that since the decree of May 27, 1915, Mr. Hubbard has contributed nothing whatever to the support or maintenance of his wife.

The right of a wife to look to her husband for support, and to maintain a bill in equity therefor, where the parties are not living together and that through no fault of the wife, is too firmly established in the law of this State to call at this time for any discussion or extended citation of authorities. *Wallingsford* v. *Wallingsford,* 6 H. & J. 485; *McCurley* v. *McCurley,* 60 Md. 185.

The only pretext upon which Mr. Hubbard relied in his testimony to justify his failure to return to his wife, or to fail to provide her with a proper allowance for her support, was that she had had him arrested and that when the parties were before the Magistrate she had asked in anticipation of his returning to their home, to be afforded police protection, but such reasons, however galling they may have been to the husband's pride, can not be relied upon as justifying a total failure to make any provision whatever for the support of the wife.

A large amount of the testimony taken at the trial of this case was directed to the capacity of the husband to support his wife, and the details of his business and the amount received by him from it were gone into at great length.

The facts upon the uncontradicted evidence of this branch of the case show that he was conducting a relatively small business in the shipping and selling of oysters, and that the profits at the close of the year were trifling in amount. In

reaching this result there were deducted as a part of the expenses of the business weekly payments to the defendant as salary of $20; to his bookkeeper of $18; a foreman, $15 and a driver, $11. Without stopping to consider or discuss whether this weekly salary list was or was not out of proportion to the amount of business done, the important fact is that Mr. Hubbard had a weekly drawing account as salary of $20.

The decree from which this appeal was taken awards Mrs. Hubbard the sum of $3 per week as permanent alimony, less than one-fourth of the earning capacity of the husband, as shown by the salary which he was drawing. Such an allowance of alimony can not be said to be unreasonable, *Ricketts* v. *Ricketts,* 4 Gill, 105; *Harding* v. *Harding,* 22 Md. 337; and since an allowance for alimony is subject to be increased or diminished by the Court making it, according to the altered condition of the parties as they may from time to time exist, no reason is apparent for disturbing the decree of the Circuit Court for Baltimore City, and that decree will accordingly be affirmed.

*Decree affirmed, with costs.*