LLOYD C. KNABE *v.* MILDRED M. KNABE

[Nos. 37-40, April Term, 1939.]

608

*Decided May 17th, 1939.*

The causes were argued before BOND, C. J., PARKE, MITCHELL, SHEHAN, JOHNSON, and DELAPLAINE, JJ.

*H. Mortimer Kremer,* with whom was *William Hoffenberg* on the brief, for the appellant.

*Harry W. Allers* and *Allers & Cochran,* submitting on brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

On December 26th, 1934, Mildred M. Knabe filed in the Circuit Court of Baltimore City a bill of complaint against Lloyd C. Knabe, her husband, praying an absolute divorce on statutory grounds, and the custody of their three children, Lloyd C., Jr., John R., and William George, born respectively, May 6th, 1925, September 8th, 1927, and June 9th, 1931.

Pending the litigation, and before decree, the parties filed in the case, on January 5th, 1935, an agreement, in which they stipulated:

"1st. That the defendant, Lloyd C. Knabe, shall pay all the Court costs of these proceedings, and the sum of

Seventy-Five ($75.00) Dollars as a counsel fee to the attorneys representing the complainant, and shall pay his own attorneys their fee for their services.

"2nd. That the Defendants shall pay unto the Complainant, Mildred M. Knabe, the sum of Ten ($10.00) Dollars per week on Friday of each week, beginning on Friday, December 28th, 1934, until the Complainant shall die or remarry, whichever event shall first arrive, or the Respondent shall die, and said payments shall be considered as alimony, pendente lite and permanent.

"3rd. That the Defendant will deed, grant, convey and assign and turn over to the Complainant, Mildred M. Knabe, all his right, title, and interest in the residence property now owned by them jointly, known as 2914 Louden Avenue, Home Owners Loan Corporation payment for December to be paid by Defendant, and the said Defendant will execute a deed and further assurance, if any, to fulfill this particular.

"4th. That the Defendant will give, grant and otherwise convey unto the Complainant, Mildred M. Knabe, all his right, title and interest in the furniture now owned by them jointly, free and clear from any liability, except books to be chosen by the Defendant, and the Underwood Typewriter.

"5th. That the Complainant, Mildred M. Knabe, shall have the care and custody of the three infant children of the parties to this cause, to wit: Lloyd C. Knabe, Jr. John R. Knabe and William George Knabe, and the Respondent agrees to pay unto the Complainant the sum of Eight ($8.00) Dollars per week solely for the support, maintenance and education of the said infant children of the parties to this cause, until said children shall have become self-supporting, or twenty-one (21) years of age, and the Defendant shall be permitted to see the said children and to have access to the said children at reasonable times."

As the result of that and other subsequent proceedings, the court, on March 5th, 1935, decreed in part that:

"The said Mildred M. Knabe the above named Complainant, be and she is hereby divorced a vinculo matrimonii from the Defendant, Lloyd C. Knabe.

"And it is further ordered that in accordance with the agreement between the parties, the defendant shall pay to the complainant the sum of $10.00 per week, as permanent alimony, on Friday of each week, accounting from December 28, 1934, and continuing thereafter subject to the further order of this Court in the premises.

"And it is further ordered that the said complainant shall have the guardianship and custody of Lloyd C. Knabe, Junior, John R. Knabe, and William George Knabe, the minor children of the parties in the proceedings mentioned, and that the said defendant shall pay to the said complainant the sum of $8.00 per week, accounting from the date of this decree, for the support and maintenance of said children, with the right to the defendant to see said children at all reasonable times, subject to the further order of this Court in the premises."

On September 18th, 1935, Lloyd C. Knabe filed a petition in the case, praying that so much of that decree as awarded the custody of the children to the mother be rescinded and that their custody be awarded to him. On October 25th, 1935, that petition was dismissed, but in the order of dismissal the court directed that "the Defendant, Lloyd C. Knabe, is hereby ordered to pay unto Mildred M. Knabe as alimony, and for support and maintenance of the infant children of the parties to this cause the sum of Fourteen ($14.00) Dollars per week, the said payments to be made through the Probation Department of the Supreme Bench of Baltimore City; and that payments of alimony and support in arrears, heretofore considered, be and are hereby suspended."

On June 20th, 1936, in connection with the complainant's petition for an increase in the alimony allowance, the parties stipulated that the following order be passed: "That the Respondent, Lloyd C. Knabe, pay unto the complainant Mildred L. Knabe, as alimony and for support and maintenance of the infant children of the

parties to this cause, the sum of Sixteen ($16.00) Dollars per week, said payments to begin immediately and to be paid through the Probation Department of the Supreme Bench of Baltimore City, subject, however, to the further order of this Court."

On November 16th, the complainant filed a petition alleging that the advancing age of the children made the allowance of $16.00 per week alimony and the support of the children inadequate. After a hearing on that petition on December 6th, 1939, the allowance was increased to $30 per week. On December 16th, 1938, the court ordered the defendant to show cause why he should not be punished for contempt for failing to obey that order. The defendant answered and by way of cause denied that the court had any power to change the allowance fixed by the decree of March 5th, 1935, and alleged that the allowance was not alimony. Notwithstanding that answer an attachment issued, and Knabe then filed a petition in which he alleged his inability to pay $30 per week, and prayed the court "to reduce the said sum payable by him for the said plaintiff and the said minor children of the parties to such sum as will be proportionate to his income and within his ability to pay". The complainant answered, and alleged that defendant's petition should not be considered (a) because he had failed to obey the order requiring him to pay $30 per week for her support and the support of their children, and (b) that that allowance had been made after full disclosure by defendant of his earnings. The defendant then filed a motion to vacate the attachment on the grounds that the allowance in the decree of March 5th, 1935, for the support of the complainant and the children of the parties, was not alimony, because it was based entirely upon the agreement of the parties, that the order of December 6th, 1938, operated to modify and alter the decree of March 5th, 1935, and that "under the original agreement and stipulation between the parties the Court was and is entirely without jurisdiction to in any way change, modify or alter the terms of the so called alimony and

support money for the plaintiff herself." After a hearing, the court, on January 16th, 1939, overruled that motion, and on January 26th, 1939, ordered that "the respondent, Lloyd C. Knabe, pay unto the Complainant, Mildred M. Knabe, for her support and maintenance and for the support and maintenance of the minor children of the parties to this cause, the sum of Twenty-one ($21.00) Dollars per week, accounting from Friday, January 20, 1939, and payable the same day of each week thereafter, subject to the further order of this Court, said sums to be paid through the Probation Department of the Supreme Bench of Baltimore City."

Thereupon the four appeals in the record were taken, one from the order of December 6th, 1938, one from a supposed order of December 23rd, 1938, one from the order of January 16th, 1939, and one from the order of January 26th, 1939.

The appeals present three questions, one, had the court after its passage the power to modify so much of its decree of March 5th, 1935, as related (a) to the support of the wife, (b) to the support of the children.; two, had the court the power to so modify that decree as to include in one item the allowance for the support of the wife and the allowance for the support of the children, which were itemized separately in it; and three, may the allowance for the support of the wife in the original decree, or for the support of the wife and children in the orders involved in these appeals, be enforced by an attachment for contempt.

Alimony is a money allowance payable under a judicial decree by a husband at stated intervals to his wife, or former wife, during their joint lives or until the remarriage of the wife, so long as they live separately, for her support and maintenance. 17 *Am. Jur.* 471; *Wallingsford v. Wallingsford*, 6 H. & J. 485, 488; *Keerl v. Keerl*, 34 Md. 21, 25; *Hokamp v. Hagaman*, 36 Md. 511, 517; *Helms v. Franciscus*, 2 Bland 544, 568; *Jamison v. Jamison*, 4 Md. Ch. 289, 296; *McCaddin v. McCaddin*, 116 Md. 567, 573, 82 A. 554; *Hood v. Hood*, 138 Md. 355, 113 A.

985; *Emerson v. Emerson,* 120 Md. 584, 87 A. 1033; *Polley v. Polley,* 128 Md. 60, 97 A. 526; *Newbold v. Newbold,* 133 Md. 170, 104 A. 366; *Blades v. Szatai,* 151 Md. 644, 649, 135 A. 841; *Bushman v. Bushman,* 157 Md. 166, 174, 145 A. 488; *Cohen v. Cohen,* 174 Md. 61, 63, 197 A. 564. In *Hood v. Hood, supra,* it is said that "In the case of death of one of the parties, the remarriage of the wife, or their mutual consent to live together alimony ceases." The statement there made, that alimony ceases unconditionally upon the wife's remarriage is contrary to the general weight of authority, which supports the view that remarriage of the wife is but a factor which is not necessarily conclusive in determining whether remarriage so far affects the wife's resources and circumstances as to make the allowance of alimony unnecessary for her support, (17 *Am. Jur.* 474, 30 *A. L. R.* 81, 64 *A. L. R.* 1273, 112 *A. L. R.* 253, 62 *L. R. A.* 975, 11 *Ann. Cas.* 523), but it is consistent with *Emerson v. Emerson, supra,* and is the law of this State.

In fixing the amount of the allowance the court may, in lieu of testimony, accept the agreement of the parties upon the amount to be allowed, and incorporate it in the decree, if fairly made, and untainted by a collusive design to facilitate the procurement of a divorce (17 *Am. Jur.* 407; *Bushman v. Bushman,* 157 Md. 166, 170, 145 A. 488; *Dickey v. Dickey,* 154 Md. 675, 678, 141 A. 387; *Emerson v. Emerson,* 120 Md. 584, 87 A. 1033), but is not required to do so (17 Am. Jur. 408, 476, 495), and in any event, whether the agreement is or is not incorporated in the decree, the provisions of the decree and not those of the agreement conclusively establish the nature of the allowance (*Emerson v. Emerson,* 120 Md. 584, 596, 87 A. 1033), and if the allowance in the decree falls within the definition of alimony, even though it is founded on an agreement, the court has the same power to enforce it which it would have had had there been no agreement. *Id.,* 120 Md. page 597, 87 A. 1033.

Where the allowance for permanent alimony is made in a decree which also divorces the parties *a vinculo,* it is

stated in 2 *Am. & Eng. Encyc. of Law* (2nd Ed.), 135, cited in *McCaddin v. McCaddin, supra,* 116 Md. page 573, 82 A. page 557, that 'the award is absolute, and cannot be altered after the expiration of the term or the time in which a new trial may be had, unless in the decree the court reserves the right to do so, or unless the power to subsequently modify the decree is given expressly by statute", but in *Winchester v. Winchester,* 138 Md. 95, 97, 113 A. 584, it is said: "And in this state, even after a final decree granting a divorce, either *a mensa* or *a vinculo,* and permanent alimony, or alimony alone, the court retains jurisdiction for the purpose of modifying its decree as to such allowance. *McCaddin v. McCaddin,* 116 Md. 567, 82 A. 554; *Emerson v. Emerson,* 120 Md. 584, 87 A. 1033; *Wygodsky v. Wygodsky,* 134 Md. 344, 106 A. 698". In *Marshall v. Marshall,* 162 Md. 116, 159 A. 260, 262, Judge Pattison for this court, referring to what was stated in *McCaddin v. McCaddin,* said: "In the later case of *Emerson v. Emerson,* 120 Md. 584, 87 A. 1033, 1035, the court referred to what was said in *McCaddin v. McCaddin, supra,* by Judge Boyd, quoting from 2 *Am. & Eng. Ency. of Law* (2nd Ed.) 135, and said: 'The question involved in this appeal was not before the court in that case. There was no opinion by the court on this point, but merely a quotation stating what the rule was held to be by that authority'. Whether the court, by the statement so made, intended to repudiate the law as enunciated in that authority, is not clearly shown." Prior to that, referring to a decree granting a divorce *a mensa,* the court, in *Hubbard v. Hubbard,* 131 Md. 291, 101 A. 772, 774, said "an allowance for alimony is subject to be increased or diminished by the court making it, according to the altered condition of the parties as they may from time to time exist." In 17 *Am. Jur.* 493 it is said: "There is, however, a distinct conflict in the authorities as to the finality of alimony allowances, and many cases, independent of distinctions recognized by others, flatly deny the power to modify. Moreover the cases upholding the rule denying the power

to modify have, perhaps, received stronger support, than the cases in which the power to modify has been upheld." And the text last quoted cites, in support of the rule denying the power to modify, *Marshall v. Marshall* and *Hubbard v. Hubbard*. But those cases do not support that text, for in *Marshall v. Marshall* it is said to be "the settled law of this state that a decree for absolute divorce may be modified to the extent of increasing or reducing the amount therein directed to be paid to the wife as alimony, as circumstances may justify," (162 Md. 116, 159 A. 262), and to the same effect is *Hubbard v. Hubbard, supra.*

In *Emerson v. Emerson, supra* (120 Md. 584, 87 A. 1037), in reaching the conclusion that "jurisdiction exists in the courts of equity to modify that part of the decree providing for alimony, whether the decree grants divorces a *vinculo* or *a mensa*," the court quoted with apparent approval this statement from the opinion in *Alexander v. Alexander*, 13 App. D. C. 334, where the court, speaking of a statute similar to the Maryland statute, Code, art. 16, sec. 15, said: "The statute contains no intimation of any difference. On the contrary the intimation is quite the reverse. The implication is that alimony in cases of divorce from the bond of matrimony is placed precisely on the same basis as alimony in case of divorce from bed and board. Nor is there any good ground in reason for the application of a different rule in the different classes of cases. * * * Now, there is very much greater reason, why, in divorce cases, more than in any other class of cases, the interlocutory or incidental portion of the decrees should continue to remain indefinitely under the control of the court. Decrees of divorce from the bond of matrimony adjudicate only one permanent right—the right of the complainant to have the bond of marriage dissolved and to be in law placed in the position of an unmarried person. * * * The decree for alimony is based upon the conditions existing at the time at which it is rendered; but these conditions are subject to change." But notwithstanding the reasoning

in *Emerson v. Emerson,* that the incidents of alimony in divorce cases are and should be the same whether the divorce granted be absolute or limited, it was decided in *Marshall v. Marshall, supra,* that where a decree awarding an absolute divorce allows no alimony, after the enrollment of the decree, the refusal of alimony is final, and the question of its allowance may not be reopened, and that conclusion is undoubtedly supported by the weight of authority. 83 *A. L. R.* 1248.

So that the law of this state now is, that where alimony is allowed in a decree awarding a divorce *a mensa* or *a vinculo,* or in a decree awarding alimony alone, the jurisdiction of the court as to alimony is continuing, whether reserved or not, and so much of the decree as relates to the allowance of alimony may be from time to time changed and the allowance increased or decreased, or otherwise modified, so as to conform to changed conditions.

The allowance made in the original decree in this case for the support of the wife possesses all of the characteristics of alimony, and none other, and is made by that name and must necessarily be classified as alimony. It and the allowance for the support of the children whose custody was awarded to the mother were there made separately as different and distinct items, and those items and the award of the custody of the children were all made "subject to the further order" of the court, and the allowance of alimony made therein may be modified and the order of modification enforced in the same way and by the same process as any other order or decree for alimony.

The remaining question is whether the power of the court to modify the allowance of alimony made in the original decree authorized it to change the form of that decree by including in a single item alimony and an allowance for the support of the children, and if it did, whether the allowance so made is alimony.

It was the husband, the appellant here, who first invoked the power of the court to change the original de-

cree, when on September 18th, 1935, he petitioned the court to award him the custody of the children, and in the order dismissing that petition the court for the first time combined in one item the allowance to the wife and to the children, reduced the total amount from $18 to $14, and suspended payment of "alimony and support" in arrears. There was no appeal from that order or from the original decree. Then, something over a year later, when the wife petitioned for an increase "of alimony," the parties consented to the passage of an order which again combined in a single item the allowance for the wife and for the children, and increased the total amount to $16 per week. Then came the petition of 1938, in which the wife asked that the allowance for the support of the children be increased, but disclaimed any intention of seeking any increase in the allowance for her support. On that petition the court again combined the two allowances and increased the total to $30 per week, later reduced to $21 per week.

Assuming that the court had continuing jurisdiction to change and modify from time to time so much of the original decree as dealt with allowances for the support of the wife and children, it is not apparent why it had not also the correlative power of changing the form of the allowance. And since appellant expressly consented to the passage of an order in that form, he at least cannot question the power of the court to make it. 17 *Am. Jur.* 495. But the question still remains, is the combined allowance alimony, or in part alimony and in part an allowance for the support of the children. That it was intended to provide for the support both of the wife and of the children is obvious, but does that fact prevent its classification as alimony. The answer is important because of the difference in the remedies available for the enforcement of an allowance for alimony and an allowance for the support of children, since the payment of alimony is a duty and not a debt (*Dickey v. Dickey, supra*, 154 Md. page 681, 141 A. 387, 58 *A. L. R.* 634, 17 *C. J.* 507), while the obligation to pay an allowance for

the support of children is, when required by a judicial decree, only a debt. *Bushman v. Bushman, supra.* So that default may be punished by imprisonment in the one case but not in the other.

It was said in *Bushman v. Bushman, supra,* through Judge Parke, that "The obligation of the father to support the infant off-spring may be a factor in determining the amount of alimony which should properly be awarded the wife where she has been awarded their custody," and in *Cohen v. Cohen,* 174 Md. 61, 65, 197 A. 564, 565, the court, referring to an order which in form was like that in issue here, through Judge Johnson said: "In the present case, by the second paragraph of the decree, the chancellor first awarded the custody of the infant child of the parties to the plaintiff, Kate G. Cohen. It was next provided that the defendant therein, Sam Cohen, pay unto his former wife "as alimony for the support of herself and their infant child at the rate of $7.50 per week, through the probation department. This part of the decree, therefore, by its own terms awards alimony to the successful contestant in that proceeding. In making this award, the needs and circumstances of Mrs. Cohen were necessarily elements for consideration." That conclusion seems consistent both with reason and a sound public policy. The total amount is given to the mother, who is also charged with the support and maintenance of the children, their needs are her needs, and if she has no funds and the father is financially irresponsible, they must suffer, and go without remedy other than the inflexible and unproductive processes of the criminal law. So that the court, in determining what her needs are, may well consider her obligations in respect to the children, and allow her alimony sufficient to support them as well as herself, not only for convenience and clarity, but in order that the enforcement of the decree may remain in the more flexible and helpful jurisdiction of a court of equity, and subject to the punitive processes which it may use to enforce its decrees. There is a perceptible tendency to measure the jurisdiction of

a court of equity to enforce a decree, requiring the father to provide for the support of children whose custody is awarded to the mother, by the remedial nature of its functions rather than by historical analogies, which has led at least one court to the conclusion that such an obligation is not a debt but a legal duty (*Fusselli v. State,* 102 Neb. 117, 166 N. W. 197, *L. R. A.* 1918 F, 421), but the weight of present authority is to the contrary.

It is not always practicable to prescribe justly and exactly how much of a common income is to be spent for the mother, and how much for the children, when they all share the same home and share according to their needs in the benefits which it offers for the use of all. And there seems to be no sound reason why the allowance of alimony to the mother should not be commensurate with her obligation to support the children whose custody has been awarded to her. And while the allowance to the wife for her support, and the allowance to her for the support of the children, are usually made separately as independent items, they are frequently combined (19 *C. J.* 259, and cases collected in note 75), especially in jurisdictions where alimony in gross may be awarded. As the decree awarded the custody of the children to the mother, we fail to see why the court had not the power, in fixing the amount to be allowed as alimony, to consider the expense of supporting them and to include it in the allowance to her.

It follows therefore that the orders in Nos. 37, 39 and 40 on the docket of the current term of this court, are free from error and will be affirmed; the order referred to in the order for appeal in No. 38 does not appear in the record and that appeal will be dismissed.

> *Orders in Nos. 37, 39 and 40 on the docket of the current term of this court affirmed, and appeal in No. 38 on said docket dismissed, all with costs to the appellee.*