## MILLER v. MILLER.
### No. 7718.

United States Court of Appeals for the District of Columbia.

Argued May 14, 1941.

Decided June 30, 1941.

---

[6] Report of the Committee on Finance of the United States Senate, 76th Cong., at p. 11.

Leonard J. Ganse, of Washington, D. C. (Carl F. Bauersfeld, of Washington, D. C., on the brief), for appellant.

Alfred M. Schwartz, of Washington, D. C. (Charles H. Bergazin, of Washington, D. C., on the brief), for appellee.

Before GRONER, Chief Justice and EDGERTON and RUTLEDGE, Associate Justices.

EDGERTON, Associate Justice.

This is an appeal from a summary judgment of the District Court for unpaid instalments of alimony under a Nevada decree. On September 16, 1933, a Nevada court granted appellee an absolute divorce with custody of two minor children, a daughter born in 1916 and a son born in 1917 or 1918. Appellant was ordered to pay to appellee $150.00 per month, "for her support, and for the support and education of the minor children"; and, if she remarried, to "continue to make such payments to * * * [her] for the support of the said minor children alone."

The complaint and bill of particulars in the present suit, which appellee commenced on January 10, 1940, alleged that the Nevada decree was still in force, that appellee had not remarried, and that since November 1, 1934, appellant had paid less than the decree required. On complaint, answer, a deposition of appellant, and affidavits, the District Court granted summary judgment for the amount of the arrears.

■ A claim for unpaid alimony under a final decree of a State court is entitled to full faith and credit here.[1] The Nevada statute of limitations bars actions upon a judgment or decree six years after the cause of action accrues. Comp.Laws Nev. § 8524. No cause of action accrued until default. Default first occurred in the instalment due on November 1, 1934, and the six year period then began to run on that instalment.[2] When this suit was brought, no suit on unpaid instalments was barred in Nevada. Accordingly none was barred here. Our three-year catch-all statute of limitations, despite its reference to "this section" (341), does not cut down the periods which are specifically prescribed in Sec-

tions 322 and 343 for suits on domestic and foreign judgments.[3]

■■ The Nevada decree prescribed a single allowance for the support of appellee and the children. Such an allowance is treated as alimony payable to the wife.[4] It is not to be construed as an award of $50 to her and $50 to each child.[5] So long as she remains unmarried, the order to pay her $150 a month is not contingent on the minority of the children; it is only in the event of her remarriage that payments are to be made "for the support of the minor children alone." The Nevada court apparently fixed alimony at $150 a month not as being all that the combined necessities of appellee and the children required, but as being all that appellant could reasonably pay. This appears from the fact that if the wife remarried while the children remained minors, appellant was to pay the full amount for the support of the children alone. The decree made no express provision for the opposite contingency of the wife remaining single after the children became adults. If it had provided expressly for that contingency, presumably it would have done so on the same principle. We are not concerned with the question whether the Nevada court now could or would, on application, modify the decree so as to reduce the amount of the alimony, in view of changed circumstances which include the maturity of the children on the one hand and an increase in appellant's salary on the other. We must enforce the decree as it stands. It is absolute, and entitles appellee to $150 a month until she remarries.

The complaint alleged that appellee had not remarried. Appellant answered that he was informed and believed, and therefore alleged, that she had remarried. His deposition set forth the following facts. A friend, whom he named, informed him in the summer of 1934 that she had learned of appellee's remarriage from two acquaintances,

---

[1] Barber v. Barber, 21 How. 582, 16 L. Ed. 226; Sistare v. Sistare, 218 U.S. 1, 13, 30 S.Ct. 682, 54 L.Ed. 905, 28 L.R.A., N.S., 1068, 20 Ann.Cas. 1061; Loughran v. Loughran, 292 U.S. 216, 227, 54 S.Ct. 684, 78 L.Ed. 1219; Phillips v. Kepler, 47 App.D.C. 384; Junghans v. Junghans, 72 App.D.C. 129, 112 F.2d 212.

[2] Arndt v. Burghardt, 165 Wis. 312, 162 N.W. 317; Gaston v. Gaston, 114 Cal. 542, 46 P. 609, 55 Am.St.Rep. 86; McGill v. McGill, 101 Kan. 324, 166 P. 501.

We need not consider whether acquiescence in continuous defaults over a six

year period would bar suits for instalments which became due thereafter. Cf. Simpson v. Simpson, 21 Cal.App. 150, 131 P. 99; Davis v. Gould, 234 Mo.App. 42, 131 S.W.2d 360, 361.

[3] D.C.Code, Tit. 24, § 343. McKay v. Bradley, 26 App.D.C. 449, 451.

[4] Knabe v. Knabe, 176 Md. 606, 6 A.2d 366, 124 A.L.R. 1317; Cohen v. Cohen, 174 Md. 61, 197 A. 564; Jackson v. Jackson, 179 Ga. 152, 175 S.E. 456.

[5] Crouch v. Crouch, 140 Ga. 76, 78 S.E. 408.

whom he also named. In the following fall he wrote to appellee that he had received this information, and warned her that he would reduce his payments unless she denied it. He knew that she received the letter, because an alimony check which it contained came back canceled. Beginning two months later, he reduced all his monthly payments from $150 to $100. Appellee neither replied to his letter nor objected, until two years later, to the reductions in his payments. He and other persons observed her at various places with one Leonard Carmalt. Others saw them together at various apartments, and also walking on the street, arm in arm, carrying groceries. Appellant himself saw them together several times, in two apartments which she successively occupied, and saw aim wiping dishes and emptying garbage there. Appellant once saw Carmalt enter her apartment about noon. He had not come out when appellant left two hours later. Appellee's affidavit in support of her motion for summary judgment stated that she had not remarried, and that she had told appellant, in reply to a letter from him in 1938, that this was the fact. But appellee did not deny that she received appellant's letter of 1934, or assert that she told him at any time before 1938 that she was unmarried, or deny his assertion that for two years she made no protest at his action in reducing his payments on the theory that she was married; nor did she deny her alleged close association with Carmalt.

■ Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that, except as to the amount of damages, there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The purpose of this rule "is to dispose of cases where there is no genuine issue of fact, even though an issue may be raised formally by the pleadings."[6] However, "The court is not authorized to try the issue, but is to determine whether there is an issue to be tried."[7] "To proceed to summary judgment it is not sufficient then that the judge may not credit testimony proffered on a tendered issue. It must appear that there is no substantial evidence on it, that is, either that the tendered evidence is in its nature too incredible to be accepted by reasonable minds, or that conceding its truth, it is without legal probative force."[8] Rule 56(e) provides that "supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Appellant's testimony to appellee's implied admission of remarriage by her failure to deny that she had remarried when her interest required her to deny it, part of his testimony to more or less matrimonial conduct, and part of his testimony to matrimonial repute, were made on appellant's own knowledge. We think that this testimony raised a genuine issue as to the material fact of remarriage.[9] Since the Nevada decree provides that, upon remarriage, payments are to be continued "for the support of the * * * minor children alone," it provides in effect that, unless there are minor children, payments are to be discontinued upon remarriage. The children have reached their majority. It follows that, if appellee has remarried, the accrual of further instalments of alimony ceased on her remarriage or on the majority of the younger child, whichever occurred later. Since there is a genuine issue as to a material fact, the court should "make an order specifying the facts that appear without substantial controversy * * * and directing such further proceedings in the action as are just."[10]

Reversed.

---

[6] Fletcher v. Krise, 73 App.D.C. 266, 120 F.2d 809, 811.

[7] Dwan v. Massarene, 199 App.Div. 872, 192 N.Y.S. 577, 582.

[8] Whitaker v. Coleman, 5 Cir., 115 F.2d 305, 306.

[9] Cf. Curry v. Mackenzie, 239 N.Y. 267, 146 N.E. 375, 376: To justify summary relief "the court must be convinced that the issue is not genuine, but feigned, and, that there is in truth nothing to be tried."

[10] Rule 56(d).