**ALBERT v. McGRATH, Atty. Gen. of United States.**

No. 8352-Y.

United States District Court
S. D. California, Central Division.
May 12, 1952.

Bodkin, Breslin & Luddy, Henry G. Bodkin, and Leonard S. Janofsky, Los Angeles, Cal., Shearman & Sterling & Wright, Walter K. Earle, Freidin & Littauer, and Rudolph M. Littauer, New York City, for plaintiff.

Walter S. Binns, U. S. Atty., Arline Martin, Asst. U. S. Atty., Los Angeles, Cal., and Harold Ungar, Atty., Department of Justice, Washington, D. C., for defendant.

YANKWICH, Chief Judge.

In an amended complaint which the Court allowed to be filed on April 16, 1952, the plaintiff, Irene Albert, seeks to recover from the Attorney General of the United States, as successor to the Alien Property Custodian, certain stocks claimed to be

owned by her, and accumulated dividends, the title to which was vested by the Alien Property Custodian by four orders dated August 28, 1942, March 11, 1943, September 30, 1943 and September 18, 1944.[1]

The plaintiff has been, since February 28, 1938, a citizen of the United States. She is unmarried and is not an enemy of the United States or a citizen or national of a designated enemy country. She claims to be the owner of 4,933⅓ shares of the common stock of Resinous Products and Chemical Company, to be referred to as "Resinous." These shares were registered in the name of Chemie Holding A. G., to be referred to as "Chemie". Chemie was a corporation of the Duchy of Luxembourg, which the complaint alleges was dissolved in accordance with the law of Luxembourg on December 9, 1940.

Upon the merger of the two corporations, on September 15, 1948, the shares in Resinous were exchanged for 67,627.01 shares of common and 1,463.72 shares of preferred stock of Rohm and Haas Corporation, to be referred to as "Rohm and Haas". The exchanged shares were turned over to the Attorney General as successor to the Alien Property Custodian.

Under the first cause of action, the plaintiff claims the entire ownership of the shares of stock of Resinous and the exchanged shares. Under the alternative second cause of action, she claims an undivided one-half interest in them. Accumulated and cash dividends in the sum of $658,840.96 and rights to certain scrip resulting from the merger are also asserted in the complaint.

Other facts will appear in the discussion to follow.

The defendant has moved for summary judgment.[2]

## I

### The Nature of Summary Judgment

The object of the rule permitting summary judgments is to allow summary disposition of cases which, on the face of the complaint and of additional facts appearing from supporting documents show there is no genuine issue as to any material fact to be tried.[3] In determining the matter, resort is had to extrinsic facts through affidavits, admissions and the like. This implies that a finding of absence of a genuine issue as to any matter of fact will be made, despite the fact that the pleadings, *as they stand,* present such issue.[4] For this reason, the sufficiency of the complaint does not stand in the way of a motion on behalf of the defendant.[5]

If an issue of fact is present, it is not the function of the court on a motion for summary judgment, to determine it. Once the court determines that there is an issue of fact, it must deny summary judgment.[6] However, when the factual issue is simple and can be determined by the court *without choosing between conflicting views,* summary judgment is proper.

Thus, in a case which arose shortly after Rule 56 was promulgated, in an action for

1. 50 U.S.C.A.Appendix, §§ 1–6, 12.

2. Rule 56, Federal Rules of Civil Procedure, 28 U.S.C.A.

3. Curry v. Mackenzie, 1925, 239 N.Y. 267, 146 N.E. 375, 376; Sartor v. Arkansas Natural Gas Corporation, 1944, 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967.

4. Fletcher v. Krise, 1941, 73 App.D.C. 266, 120 F.2d 809, 812; Miller v. Miller, 1941, 74 App.D.C. 216, 122 F.2d 209, 212; Koepke v. Fontecchio, 9 Cir., 1949, 177 F.2d 125, 127; Dewey v. Clark, 1950, 86 U.S.App.D.C. 137, 180 F.2d 766, 770–772.

5. Lindsey v. Leavy, 9 Cir., 1945, 149 F.2d 899, 902; William J. Kelly Co. v. Recon-struction Finance Corp., 1 Cir., 1949, 172 F.2d 865, 866; Wilkinson v. Powell, 5 Cir., 1945, 149 F.2d 335; Harris v. Railway Express Agency, 10 Cir., 1949, 178 F.2d 8; Hurd v. Sheffield Steel Corp., 8 Cir., 1950, 181 F.2d 269; Compania De Remorque y Salvamento, S.A. v. Esperance, Inc., 2 Cir., 1951, 187 F.2d 114, 117.

6. Sarnoff v. Ciaglia, 3 Cir., 1947, 165 F.2d 167, 168. See, Traylor v. Black, Sivalls & Bryson, Inc., 8 Cir., 1951, 189 F.2d 213, 216; Doehler Metal Furniture Co., Inc., v. United States, 2 Cir., 1945, 149 F.2d 130; Lindsey v. Leavy, 9 Cir., 1945, 149 F.2d 899; Butcher v. United Electric Coal Co., 7 Cir., 1949, 174 F.2d 1003, 1006; Hunter v. Mitchell, 1950, 86 U.S.App.D.C. 121, 180 F.2d 763, 764.

services by an attorney, where it appeared that the attorney had been disbarred from practicing in the courts in which the services were alleged to have been rendered, summary judgment was properly granted, the Court saying the purpose of Rule 56

"is to dispose of cases where there is no genuine issue of fact, even though an issue may be raised formally by the pleadings." [7]

And, *in a border-line case*, in an action for breach of contract to sell lumber, where the breach was admitted and the damage flowing from non-performance could be determined without trial, summary judgment was sustained.[8]

In an action on a policy of life insurance, where it appeared that the deceased had not made full disclosure that she had consulted physicians, which failure would bar recovery, summary judgment was held justified.[9]

And where, in the action for personal injury by an employee of a railroad, it appeared that the injury was unconnected with the employment and occurred on property not under the control of the railroad, summary judgment for the defendants was ruled proper.[10]

A similar conclusion was reached in the Court of Appeals for the Ninth Circuit, in an action by a seaman brought against the owners of a vessel, where it appeared that the defendant did not own the vessel and was not responsible for its unseaworthiness or any negligent act committed on it to which the injury could be traced.[11]

Although the courts are loath to interfere with administrative bodies, where it appeared that certain claimed premises were decontrolled by the Housing and Rent Act of 1947,[12] and no administrative remedy existed for securing an adjudication to that effect, the court entertained an action for declaratory relief, and, it appearing that the building was exempt, summary judgment against the Housing Expediter was sustained.[13]

## II

### Plaintiff's Claimed Interest

The case before us comes within the purview of these cases. For the facts before the court present the question whether the plaintiff has "any interest, right, or title" in the property to enable her to bring the action under the Trading with the Enemy Act.[14] The admitted facts which show the source of her title are these:

Prior to December 9, 1940, the legal ownership of the shares here involved was in Chemie. On May 4, 1940, the plaintiff and her brother, Alexander Albert, who were the owners in equal shares of all the stock of Chemie entered into an agreement in anticipation of its dissolution and liquidation, in which it was provided that upon dissolution and liquidation of Chemie, its assets

---

7. Fletcher v. Krise, 1941, 73 App.D.C. 266, 120 F.2d 809, 812. A similar ruling was made where it appeared that the debt sued on was given for an illegal consideration. Silverman v. Osborne Register Co., 1946, 81 U.S.App.D.C. 163, 155 F. 2d 879; Williams Mfg. Co. v. Prock, 5 Cir., 1950, 184 F.2d 307.

8. Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 2 Cir., 1945, 147 F. 2d 399.

9. Engl v. Aetna Life Ins. Co., 2 Cir., 1943, 139 F.2d 469.

10. Wilkinson v. Powell, 5 Cir., 1945, 149 F.2d 335. Similarly where undisputed facts showed adverse possession, Fife v. Barnard, 10 Cir., 1951, 186 F.2d 655.

11. Thomas v. Furness (Pacific), Limited, 9 Cir., 1948, 171 F.2d 434, where non-liability appeared because the plaintiff was an emergency employee.

12. 50 U.S.C.A.Appendix §§ 1881 et seq., 1892(c).

13. Koepke v. Fontecchio, 9 Cir., 1949, 177 F.2d 125, 127. The opposite situation appeared in a case where war contractors asserted a right to additional compensation under the War Contracts Hardship Claims Act, 41 U.S.C.A. § 106, Note. As the statute contemplates relief as a matter of grace, and not as of right, Fogarty v. United States, 1950, 340 U.S. 8, 12, 71 S.Ct. 5, 95 L.Ed. 10, the Court held that no recovery for a balance over and above the amount allowed by the agency (the Navy Department) could be had and sustained a summary judgment. Davidson v. United States, 1950, 88 U.S.App.D.C. 42, 185 F. 2d 897.

14. 50 U.S.C.A.Appendix, § 9(a):

would be divided in kind between the plaintiff and her brother, the plaintiff to receive the Resinous stock and the brother to receive the balance of the company's assets. On December 9, 1940, Chemie was dissolved according to the laws of Luxembourg. The plaintiff claims that upon dissolution, she automatically became the owner of the shares pursuant to the agreement of May 4, 1940.

The alternative claim of one-half ownership is grounded on the contention that if the agreement with her brother was not definite enough to confer ownership rights, she was joint owner by virtue of the act of dissolution of the corporation. For the purpose of the dissolution, a written agreement between the plaintiff and her brother was entered into on December 1, 1940, at Berlin, Germany, assigning her shares in Chemie to the brother. This agreement, in translation, recites, among other things:

"We consider it advisable before carrying out this decision to again set forth in writing that this assignment of the property rights of the undersigned, Irene Albert, has been given solely and exclusively for the purpose of the dissolution of the company and its cancellation in the mercantile register and in no way affects the property rights to the assets of the Chemie Holding which we have already divided between ourselves by another agreement."

The prior agreement of which this agreement speaks, was oral.

An act of dissolution was executed on December 9, 1940. The plaintiff made timely claim for the return of the property on May 5, 1947. Her claim set forth the facts substantially as outlined.

The question to be determined is whether the plaintiff has an interest, right or title in the property sufficient to enable her to bring this action under the Act.[15]

■ It is conceded that, *at no time*, did the plaintiff have a license under the Act.[16] And the effect of the absence of such license nullifies any transfer of the type forbidden by the Act.[17] The only seeming deviation from the explicit language of the statute, as interpreted in the case just cited, relates to transactions which are given a definite status by state law. When this occurs, the transactions are recognized, subject to the custodial rights. Such was the situation where judgment had been rendered in a state court upon a claim entitled to preference under the New York banking law,[18] and where claims had been reduced to judgments and attachments levied.[19]

So we come to the crucial question whether the plaintiff had, at any time, any interest in the claimed stocks permitting her to institute this action.

Before answering it, two other facts should be adverted to. One is that on February 28, 1940, the Government of Luxembourg promulgated a decree which became effective on March 2, 1940. Among other things, it forbade the executives of corporations to dispose of the property or the rights of the corporation located outside the territorial limits of the country.[20]

■ On April 10, 1940, the President issued an Executive Order under the Trading with the Enemy Act.[21] This was supplemented by the Joint Resolution of the Congress of May 7, 1940,[22] which, in turn, was followed by a later Executive Order dated May 10, 1940,[23] forbidding any transaction in this country with relation to property

15. 50 U.S.C.A.Appendix § 9(a).

16. 50 U.S.C.A.Appendix, § 5(a).

17. 50 U.S.C.A.Appendix, § 5(b) (1); Propper v. Clark, 1949, 337 U.S. 472, 482–484, 69 S.Ct. 1333, 93 L.Ed. 1480.

18. Lyon v. Singer, 1950, 339 U.S. 841, 70 S.Ct. 903, 94 L.Ed. 1323.

19. Zittman v. McGrath, 1951, 341 U.S. 446, 71 S.Ct. 832, 95 L.Ed. 1096. And see, Clark v. Uebersee Finanz-Korporation, 1947, 332 U.S. 480, 68 S.Ct. 174, 92 L. Ed. 88, where persons owning shares of stock in a domestic corporation *free of any foreign taint* were permitted to sue.

20. Decree, Sec. 6.

21. Executive Order No. 8389, 5 Fed.Register, p. 1400, 12 U.S.C.A. § 95a note.

22. 54 Stats. 179.

23. Executive Order No. 8405, 5 Fed.Register, p. 1677, 12 U.S.C.A. § 95a note.

within the United States. A portion of Section 1 of this Executive Order prohibited

"E. All transfers, withdrawals or exportations of, or dealings in, any evidences of indebtedness—or evidences of ownership of property by any person within the United States; and

"F. Any transaction for the purpose or which has the effect of evading or avoiding the foregoing prohibitions."

The effect of this order was to prohibit any change of title to the property.[24]

■ In the light of these facts, what, if any, title would the plaintiff have? At the time of the transaction she *was not* a stockholder of Resinous. The title to the shares of Resinous were in Chemie. All she had was an agreement with her brother that upon dissolution of the corporation and its liquidation, the Resinous shares *would be transferred to her.* It is the law of Luxembourg that the filing of an act of dissolution *does not* terminate the corporation. There must be liquidation; and only after liquidation is completed, is the dissolution effective.[25]

Cases which give recognition to contracts relating to the acquisition of interests in shares or personal property are those in which, to all intents and purposes, the transfer of title has been made and nothing further remains to be done, except, perhaps, delivery.[26]

■ Two recent decisions of the Supreme Court[27] give us a clue to the meaning of the words "right, title, and interest" in Section 9(a) of the Act. This is contained in the following language in one of the cases:

"In view of our holding that Congress has recognized that *nonenemy stockholders of nonenemy foreign corporations have a severable interest in corporate assets seized by the Custodian,* it follows that the allegations of these petitioners entitle them to intervene."[28] (Emphasis added.)

While it is true that the Court was interpreting the word "interest" with an eye on the rules for intervention,[29] it is evident that in dealing with the assets of a nonenemy foreign corporation, the Court held that the nonenemy stockholders *do have a severable interest* in the assets seized by the Custodian.

In reaching this conclusion, the Court conceded that under the ordinary law of corporations, the stockholders do not have an interest in the assets of the corporation.[30] But it is to be noted that three conditions must co-exist: (a) the claimant must be a stockholder, (b) he must be a nonenemy stockholder and (c) the corporation must be a nonenemy corporation.

■ The plaintiff in this case is a nonenemy person. But at the time when the freezing orders took effect, Chemie had been seized by the enemy and the plaintiff was not a stockholder of Resinous. The Resinous shares were held by Chemie. The plaintiff had, at most, an agreement with her brother that, upon dissolution and liquidation of Chemie, the Chemie assets *would be divided and she would receive as her share the Resinous shares.* She her-

---

24. Propper v. Clark, supra, 337 U.S. 472, at page 486, 69 S.Ct. 1333.

25. Luxembourg Corporation Law, Arts. 140–152.

26. Standard Oil Company v. Clark, 2 Cir., 1947, 163 F.2d 917, 927.

27. Kaufman v. Société Internationale Pour Participations Industrielles et Commerciales, S. A., etc., 1952, 72 S.Ct. 611, 96 L. Ed. ——; Uebersee Finanz-Korporation v. McGrath, 1952, 72 S.Ct. 618, 96 L.Ed. ——.

28. Kaufman v. Société Internationale Pour Participations Industrielles et Commer-

ciales, S. A., etc., supra, 72 S.Ct. 611, 614, 96 L.Ed. ——.

29. Rule 24(a) (2) Federal Rules of Civil Procedure.

30. Cf. Klein v. Board of Tax Supervisors, 1930, 282 U.S. 19, 51 S.Ct. 15, 75 L.Ed. 140; First National Bank of Boston v. Maine, 1932, 284 U.S. 312, 329–330, 52 S.Ct. 174, 76 L.Ed. 313; Helvering v. O'Donnell, 1938, 303 U.S. 370, 58 S.Ct. 619, 82 L.Ed. 903; Rhode Island Hospital Trust Co. v. Doughton, 1926, 270 U.S. 69, 81–82, 46 S.Ct. 256, 70 L.Ed. 475; Miller v. McColgan, 1941, 17 Cal. 2d 432, 435–436, 110 P.2d 419, 134 A.L. R. 1424.

*self has stated this agreement, in the terms just given, in her claim.* An agreement to transfer stock to a certain person at *a future time* does not make that person a stockholder as of *the time of the agreement.* Even persons holding priority rights or warrants for stock are not considered stockholders.[31] A stockholder in a corporation which owns all the stock of another is not a stockholder in the latter corporation, or the owner of its assets.[32]

The law of Luxembourg recognizes the distinction between the corporation and its shareholders. A corporation is a distinct entity having a juridical personality distinct from those of the stockholders.[33] Its assets *(patrimoine)* are distinct from the assets of the stockholders.[34] As long as the company exists, the stockholders have no undivided interest in its property *(pas de co-propriété indivise).*[35] The stockholder has only a claim against the corporation based on the charter, to share in the profits or, in case of liquidation, to a share in the distribution of its net assets.[36] The corporation alone deals with third persons. Its debts and obligations are distinct from those of the shareholders.[37]

These principles apply to a Luxembourg holding company.[38] It, too, is a juridical person. While it does not engage in industrial activities, it holds the shares of the constitutent corporations in the same manner as do ordinary corporations.[39] The passage of all stock into the ownership of one person amounts to a dissolution of the corporation.[40] But such passage of ownership does not confer upon the sole owner the right to the assets of the corporation. These assets, until complete liquidation, continue in the ownership of the corporation, despite dissolution.[41]

So it is evident that if the plaintiff has an interest, right or title in the stocks which she claims, her claim must stem from the Congressional enactment and not from any special rights under the law of Luxembourg.

## III

### Plaintiff is Not a Stockholder

Interpreting as we do, the late decisions of the Supreme Court[42] as establishing the principle that for the purpose of instituting an action like the present one under the Trading with the Enemy Act,[43] a stockholder in a corporation has an interest, right or title in the property owned by the corporation, it is evident that neither under the American law nor under the Luxembourg law was the plaintiff a stockholder of Resinous or had any definable owner-

---

31. Eisner v. Macomber, 1920, 252 U.S. 189, 208–212, 40 S.Ct. 189, 64 L.Ed. 521; Miles v. Safe Deposit & Trust Company, 1922, 259 U.S. 247, 252–254, 42 S.Ct. 483, 66 L.Ed. 923; Helvering v. Southwest Consolidated Corp., 1942, 315 U.S. 194, 198–199, 62 S.Ct. 546, 86 L.Ed. 789.

32. 18 C.J.S., Corporations, § 475(h); 13 Am.Jur., Corporations, Sec. 6; Green v. Victor Talking Machine Co., 2 Cir., 1928, 24 F.2d 378, 380–381.
   "*Notwithstanding all its stock was owned by the United States it must be regarded as a separate entity.*" United States v. Strang, 1921, 254 U.S. 491, 492, 41 S.Ct. 165, 166, 65 L.Ed. 368. (Emphasis added.)

33. Fernand Passelecq, Traité des Sociétés Commerciales, 1934, Secs. 93–94.

34. Fernand Passelecq, Op.Cit., Secs. 95–96.

35. Fernand Passelecq, Op.Cit., Sec. 97.

36. Fernand Passelecq, Op.Cit., Sec. 98.

37. Fernand Passelecq, Op.Cit., Sec. 99.

38. Leon Metzler, Mélanges de droit Luxembourgevis, 1949, p. 55.

39. Bernard Del Vaux and Edmond Reiffers, Les Sociétés "Holding" au Grand-Duché de Luxembourg, 1948, pp. 55–57.

40. Passelecq, Op.Cit., Sec. 3228.

41. Luxembourg Corporation Law, Secs. 141–151; Passelecq, Op.Cit., Sec. 3230. See, L. Fredericq, Traité de droit commercial belge, 1950, Vol. VI, Sec. 929, pp. 1341–1346.

42. Uebersee Finanz-Korporation, A.G. v. McGrath, 1950, 72 S.Ct. 618, 96 L.Ed. ——; Kaufman v. Société Internationale Pour Participations Industrielles et Commerciales, S.A., 1950, 72 S.Ct. 611, 96 L. Ed. ——.

43. 50 U.S.C.A.Appendix, § 9(a).

898

ship in the Resinous stock, either before or after the dissolution of Chemie.

Whether we take May 4, 1940, the date of the alleged agreement between the plaintiff and her brother, or December 9, 1940, the date of the execution of the act of dissolution, as the starting point, the plaintiff had no interest in the stock of Resinous at either date. Resinous shares were in the portfolio of Chemie along with whatever other stocks Chemie, *as a holding company*, was holding.

The Decree of the Luxembourg Government dated February 28, 1940, and the Executive Order issued by the President of the United States on May 10, 1940, pursuant to the broader authority granted by the Congressional Joint Resolution of May 7, 1940, stayed the hands of the plaintiff and her brother with relation to the shares. Under the Luxembourg Decree the plaintiff and her brother could not effect any change of ownership of stock owned outside the country. Under the President's Executive Order such transfer was of no legal effect. Nothing that happened later could or did affect the conditions as they existed on the dates of which we speak.

At the time the vesting orders were made, the plaintiff had no interest in the Resinous stock. The Luxembourg Decree and the Presidential Executive Order "froze" the ownership of Chemie and Resinous as it existed at the time.

The subsequent Luxembourg Decree dated August 5, 1946, and the Brussels Agreement between the United States and Luxembourg dated December 5, 1947, cannot be retrojected into the past so as to give to the plaintiff an interest in Resinous stock as of 1940, when the title to such stocks was held by Chemie.[44] The Luxembourg Decree of 1946 merely allowed corporations dissolved during the occupation to reestablish themselves. Upon compliance with the requirements for reestablishment, the corporation was placed "in the state existing prior to its dissolution."

It is difficult to understand what comfort the plaintiff can derive from this Decree. If it has the effect of continuing the interrupted dissolution and liquidation of Chemie, then the liquidation has not been completed and no transfer of assets has taken place. Under the legal principles already discussed, the plaintiff has only an agreement with her brother to transfer to her Resinous stock, *which does not make her a stockholder as of the date of the agreement or as of today.*

The Brussels Agreement which was called, "Agreement Relating to the Resolution of Conflicting Claims to German Enemy Assets", merely seeks to give recognition to the rights of Luxembourg citizens to property which had been appropriated by the German invaders and establishes means for adjudicating claims arising from the expropriation of nonenemy owners.[45] Grant that the purpose of this agreement was to protect the interest of United States nationals in assets outside Germany owned either by a corporation in which there is a Ger-

**44.** The plaintiff's law expert, Mr. Harry Torczyner, argues that a stockholder in a Luxembourg corporation has *an interest* in the property of the corporation. He states: "Wodon, a noted Belgian authority, (Revue Pratique des Sociétés, 1913, 72) argues that as to the actual capital the shareholder has a right of undivided co-ownership of a part of the corporate assets." But it is quite evident that this is not an authoritative statement of law. It is merely the speculative reasoning of a Belgian writer. A study of the Luxembourg authorities which Mr. Torczyner himself recognizes as such, and which are referred to in Notes 33 to 41, *in the original*, shows conclusively the contrary. Fernand Passelecq, Op.Cit., p. 109, states specifically that the stockholders have no co-ownership: "Sec. 97 * * * enfin, que les associés, tant que dure la société, n'ont plus sur les biens dont ils ont fait apport qu'un droit mobilier et pas de co-propriété indivise." (And that the members as long as the corporation exists * * * have no undivided co-ownership.)

**45.** Ely Maurer and James Simsarian, Agreement Relating To The Resolution Of Conflicting Claims to German Enemy Assets, Dept. of State Bulletin, Vol. 18, No. 444, p. 3, Jan. 4, 1948.

man interest or by a corporation recognized under the law of Germany.[46] However, neither is sufficient to establish the character of the plaintiff as a stockholder of Resinous, which is a necessary and indispensable condition to her right to institute this action.

It follows that the plaintiff does not have a right, title or interest in the property claimed in this action.[47]

The motion for summary judgment is, therefore, granted, and judgment is ordered, entered in favor of the defendant.

Formal order to follow.

46. Ely Maurer and James Simsarian, Op. Cit., loc. cit., p. 4.

47. 50 U.S.C.A.Appendix, § 9(a).