In the Matter of the Accounting of JANE E. CARR, as Administratrix C. T. A. of BENEDICT ERSTEIN, Deceased.

Surrogate's Court, New York County, March 16, 1954.

*Gale, Bernays, Falk & Eisner* for administratrix c.t.a., petitioner.

*Edward S. Bentley* and *Robert T. Aller* for Harriet H. Nalley, respondent.

*Joseph Levine,* special guardian for Peter K. Sour and another, infants, respondents.

COLLINS, S. The testator died on March 14, 1952, leaving a will dated February 15, 1945, which contained no bequest to his widow. She elected to take against the will (Decedent Estate Law, § 18). In the final accounting of the administratrix *c.t.a.*, the petition alleges that the dispositive provisions of the will represent performance by the testator of the obligations imposed on him by a separation agreement between him and his former wife, and it asks the court to determine whether, under such circumstances, the widow is entitled to elect and, if so, the effect of her election upon the terms of the will.

The testator and the respondent Florence Kohler were married in 1909. Two children were born of that marriage. Prior to 1935, the husband and wife had separated, and on January 3d, of that year they entered into a separation agreement. That instrument expressed the parties' recognition of the fact that the testator's financial situation was such that he could not agree to contribute any fixed sum to the support of his wife. He assigned to his wife a promissory note made to him by a third person, and in general terms agreed that " if, as and when " his financial condition would justify his doing so, he would contribute reasonably to her support and maintenance. The third paragraph of the agreement read as follows: " THIRD: Mr. Erstein further agrees that he will in and by his Last Will and Testament provide that his entire estate of whatever the same may consist at the time of his death, shall be bequeathed to a trustee or trustees, in trust, to pay the entire net income derived therefrom during her lifetime to Mrs. Erstein, with the provision that the remainder upon her death shall pass in equal shares to the two children of their marriage

and to the respective issue of said children in equal shares per stirpes; and failing such issue in the event of the death of one of said children, to the other of the said children who may survive and his or her issue, as the case may be, in equal shares per stirpes. It is understood that the total amount of net income receivable by Mrs. Erstein in any one year shall not exceed the sum of $10,000.''

Florence Kohler obtained a divorce from the decedent in the State of Nevada in February, 1935. The terms of the separation agreement were incorporated in the divorce decree and were adopted and approved by the court. Thereafter the testator married the respondent Harriet H. Nalley. The will which has been admitted to probate follows closely the requirements of the third paragraph of the separation agreement. Except for a gift to his children of silverware that belonged to his mother, his entire estate is bequeathed to trustees, with directions to pay the entire net income, but not in excess of $10,000 in any one year, to his former wife during the term of her life. Upon her death the corpus is to be delivered to their two children, in equal shares, or to their respective issue per stirpes.

The widow contends that her right of election was not impaired or defeated by the separation agreement and that she is entitled to receive one third of the testator's net estate. The accounting fiduciary does not dispute the right of the widow to take against the will but in her petition she suggests that the widow's right is subordinate to the obligation of the testator to his former wife, and that the widow has the right only to one third of the residuary trust as it will be constituted at the death of the former wife. The special guardian of the infant contingent remaindermen of the testamentary trust argues that the right of election could attach only to property which the testator could freely dispose of, and that his entire estate having been the subject of disposition under a prior contract, the widow has no rights which are superior to the first wife or to her issue:

The decision in *Matter of Hoyt* (174 Misc. 512) is authority for the widow's right to take her intestate share against the will. In principle, that case is not distinguishable from this. There, as here, the separation agreement required the creation of a testamentary trust for the wife, with remainder to children. That testator performed his promise just as did this testator. In both cases a subsequent divorce decree ratified the separation

agreement and the divorce was followed by remarriage. In each case the widow elected to take against the will. In *Matter of Hoyt* (*supra,* p. 516), the former wife died before the trial and the claimants were her executors and the children. Mr. Surrogate Foley said: " [The] claimants are not creditors under \* \* \* the separation agreement, but \* \* \* the agreement merely created an enforcible obligation to make a testamentary provision for the benefit of the first wife of the testator and his children after her death. The testator performed that agreement. He undertook to do no more. The status of the claimants is, therefore, that of legatees or beneficiaries under the will. As such legatees or beneficiaries they take subject to the operation of the statutes relating to testamentary dispositions, including the right of the surviving widow to take her intestate share under section 18 of the Decedent Estate Law. Their rights are also subordinate to all true creditors of the estate. The widow of the testator is, therefore, entitled to a one-third share of the net estate. The respective interests of the claimants as legatees or beneficiaries must be satisfied out of the balance."

The principle established in *Matter of Hoyt* (*supra*), was approved and followed by Surrogate Griffiths in *Matter of Lewis* (123 N. Y. S. 2d 859), where the question was precisely the same as the one now presented, and by Surrogate McGarey in *Matter of Searles* (82 N. Y. S. 2d 219), where the issue related to estate taxes and their apportionment. Surrogate Griffiths said: " The distinction is one between a direction to make a gift or conveyance and a promise to make a testamentary provision. \* \* \* The breach of an agreement to make a testamentary provision would not constitute the wife a creditor but would create an equitable right to enforce the obligation of the deceased husband. \* \* \* In this respect the former wife and the children of said marriage are regarded as legatees and not as creditors, and their rights are subordinate to the right of election of the surviving spouse." (Pp. 862–863.)

A contrary result was reached in *Brindisi* v. *Stallone* (259 App. Div. 1080, 1081). That suit was for specific performance of a contract by the defendants' decedent to leave all of his property to plaintiff. The Appellate Division (Second Department) reversed, on the law and the facts, the judgment rendered below and remitted the matter to Special Term to take further proof in accordance with the memorandum decision. Insofar as is here relevant, the court said: " The judgment properly con-

fined the widow's interest to her exemption rights under section 200 of the Surrogate's Court Act. When the present widow married the decedent in 1931, at which time the present provisions in the Decedent Estate Law were operative, the decedent prior thereto, in good faith, had obligated himself, for a valuable consideration, to leave all his property to the plaintiff. The present widow, therefore, married the decedent under circumstances that were equivalent to marrying a man who possessed no property that was subject to devolution at his death. The widow, under the statute, had only an expectant interest which was subject to the contingency that the decedent had not in good faith sold or given away or completely encumbered his property in his lifetime. Here, in good faith, prior to his marriage to the present widow, he had obligated himself to plaintiff so as to deprive anyone else of the right to enjoy his property. Therefore, nothing was possessed by the decedent to which the otherwise expectant interest of the widow could attach. The same would be true if, instead of this contract obligation to convey all the property to the plaintiff, there had existed a debt in a sum greater than the decedent's entire estate. The provisions in the Decedent Estate Law for the benefit of a surviving spouse attach only to such property of a decedent as remains after performance of his obligations and payment of his debts, assuming, of course, that good faith is present throughout.''

This decision, it is argued, does not refer to section 18 of the Decedent Estate Law and could not have been intended to apply to that statute because in that case no valid will was before the court. It is true that a right of election was not directly involved. However, the remedy of specific performance being subject to restrictions and conditions which equity imposes (4 Pomeroy on Equity Jurisprudence [5th ed.], § 1404 et seq; 4 Page on Wills, § 1736), it was argued that a judgment in equity should provide that plaintiff's interest in the property is subject and subordinate to the right of the widow to share first in the estate of her husband. In the argument in the Appellate Division, the widow urged that a court of equity regard the contract as in the nature of a will or testamentary disposition and must recognize a right similar to that given the widow by section 18 where there is a valid will. She assumed that had there been a will she would have preferential status under section 18 and she argued that equity could not fairly give the promisee more by way of specific performance than the promisor could give if he performed. The Appellate Division

was, therefore, directly concerned with all of the rights of the widow under the Decedent Estate Law, and the quoted text of the decision was its answer to the arguments predicated on section 18.

The difference in results between *Matter of Hoyt* (174 Misc. 512, *supra*), on the one hand, and *Brindisi* v. *Stallone* (*supra*), on the other, cannot be reconciled by the supposed distinguishing fact that the testator performed in the first case while the promisor died intestate in the other. It would be anomalous if the rights of the promisees would be substantially greater in the case of intestacy than they would be had the testator left a will which carried out his promise. The rights of the promisees depend upon the terms of the contract read against the background of the applicable statute, and not upon the extent to which the promisee attempted to comply with his contract. The nature of the decedent's promise and the value of the thing promised do not change by reason of his recognition of the contract or his willful breach of it.

The supposed difficulty that would arise from a determination that a contract to bequeath is limited by the widow's statutory rights, was discussed in *Dillon* v. *Public Trustee of New Zealand* (L. R. [1941], A. C. 294). The Chief Justice of the Court of Appeal of New Zealand, in reversing a judgment which thus limited the effect of a contract to devise, said (p. 304): " ' The effect of the decision appealed against is that where A. enters into a contract with B., for valuable consideration, that he will by his last will and testament devise certain lands to B., and A. subsequently marries and actually performs his contract, B. is to be in a worse position than if A. had committed a breach of his contract. It would be an extraordinary thing if our law permitted such a result.' '' The House of Lords, in restoring the original judgment, expressed disagreement with the view that such a result must follow. The Lord Chancellor said (pp. 304-305): " Under a system of law which gives to the court no jurisdiction to alter, to the detriment of B, the devise made by A in B's favour, the compensation due to B from A's estate, if A fails to fulfil his contract to make the devise, will be the value of that which B should have received under the will. In New Zealand, however, this value is not necessarily the whole value of the interest which the testator agreed to devise, but is that value less the extent to which it would be reduced by a redistribution due to the application of the Family Protection Act. In other words, in accordance with the principle of the cases

cited, the loss suffered by B from A's breach of contract is the equivalent of the benefit which B would have enjoyed if the contract had been performed. This benefit, owing to the provisions of the Family Protection Act, is not necessarily equivalent to an unconditional right to receive the devise in full, and the estimate of B's loss is proportionately reduced. Thus, B is in the same position, so far as compensation is concerned, if A breaks his contract as he would be if A had performed it. There may well be instances where all this is difficult to work out, but their Lordships cannot entertain any doubt, that, in principle, the Family Protection Act affects the unqualified operation of a contract to make a will in a particular form, whether the contract is fulfilled or whether it is broken.''

Nor can the decision be made to depend upon whether the courts in other cases refer to the promisee as primarily a legatee or a creditor. For some purposes the promisee may be regarded as a claimant and for others as a legatee. It is often convenient to characterize a set of rights and concomitant duties by a label which clearly calls to mind all of such rights and duties. It would be misleading, however, to attempt to define the full set of rights and duties on the basis of the name used by a court to signify only some of them. It is the substance of the promisees' rights which now concern us, not the name which most nearly signifies them.

The real difference between these conflicting decisions springs from the differing views as to the effectiveness of section 18 and the public policy back of it. If section 18 does not limit in any way the right of a married person to make a contract governing the disposition of property by will, then the exercise of the widow's election cannot operate to deprive the promisee of what she has been promised. If, on the other hand, section 18 does limit that right, then the value of the thing promised is not necessarily the value of the entire body of property owned by him at his death but the value of his net estate reduced by the widow's forced share.

The court is of the view that section 18 of the Decedent Estate Law does limit the power of a married person to bind himself by contract to devise and bequeath his property in a manner that would deprive the surviving spouse of her statutory rights.

The right of election to take against the will was substituted for the ancient right of dower and was intended to prevent `` disinheritance or unfair discrimination '' against the sur-

viving spouse. (Combined Report of Decedent Estate Comm., Reprint, p. 19.) The Legislature has expressly declared that its intention in enacting section 18 and related sections of the Decedent Estate Law was " to increase the share of a surviving spouse in the estate of a deceased spouse, either in a case of intestacy or by an election against the terms of the will of the deceased spouse thus enlarging property rights of such surviving spouse ". (L. 1929, ch. 229, § 20.) " The inconsistency in our old law which compelled a man to support his wife during his lifetime and permitted him to cut her off with a dollar at his death, has given way to a new public policy which no longer permits a testator to dispose of his property as he pleases." (*Matter of Greenberg*, 261 N. Y. 474, 478.)

Section 18 gives to each spouse a property right which, during the lifetime of the other, is merely expectant and contingent. (*Newman* v. *Dore*, 275 N. Y. 371, 377.) It ripens into an absolute right upon the death of the other and operates upon all of the property which becomes part of the estate of the deceased spouse. The statute does not inhibit the *inter vivos* transfer of property by either spouse. One may sell it, give it away or subject particular assets to valid liens or charges, provided only that the transfer or conveyance is real and not merely illusory. (*Newman* v. *Dore, supra; Matter of Halpern*, 303 N. Y. 33; *Inda* v. *Inda*, 288 N. Y. 315.) One thing he may not do, however, and that is effectively to will his property in violation of the right of a nonassenting spouse. It is on the power of testamentation that the statute directly operates.

The distinction between a contract legatee and a creditor or a lienor may be sometimes difficult to bring into sharp focus. However, the difference between a covenant to bequeath and an actual conveyance or perfected lien is too clear to be misunderstood. A creditor may make such agreement with his debtor as he chooses but whenever the settlement agreement touches upon a bequest or devise by either of them, both parties must recognize that, just as the power to make a will is subject to conditions and restrictions, so, too, is a contract to make a will.

The " dead hand rules succession only by sufferance. Nothing in the Federal Constitution forbids the legislature of a state to limit, condition, or even abolish the power of testamentary disposition over property within its jurisdiction." (*Irving Trust Co.* v. *Day*, 314 U. S. 556, 562.) The decision last cited affirmed the order of the Court of Appeals in *Matter of McGlone* (284 N. Y. 527). In that case the Court of Appeals said: " The

Legislature has determined to restrict the husband's rights, previously unrestricted, to provide by will how his property should pass at his death." (P. 534.) That restriction on the power to bequeath was enacted long before the making of the contract in the pending case. The widow may waive her rights in the manner prescribed by the statute, but the husband is powerless to lift the restriction without her concurrence. No third-party agreement can bestow upon him authority which the State withheld from him.

If a man could validly bind himself by contract to bequeath his property to others so as to disinherit his widow, then the right of election given to the widow can be set at naught by any testator who will take the time to incorporate his testamentary wishes in a contract prior to the formal execution of his will. Consideration is, of course, necessary but " anything which fulfills the requirements of consideration will support a promise whatever may be the comparative value of the consideration, and of the thing promised " (1 Williston on Contracts, p. 389) and it would be a rare case where some consideration could not be worked into the arrangement. It is suggested that " good faith " be the test for determining the validity of such a contract. (Cf. *Brindisi* v. *Stallone*, 259 App. Div. 1080, *supra.*) That test was decisively rejected in *Newman* v. *Dore* (275 N. Y. 371, 379). " Motive or intent is an unsatisfactory test of the validity of a transfer of property ", said the court. " Intent may, at times, be relevant in determining whether an act *is* fraudulent, but there can be no fraud where no *right* of any person is invaded." If a widow has no right to elect against a will made pursuant to contract, then her husband's agreement is not invalid simply because he intended that she receive nothing.

The test of the validity of a conveyance is whether it was real or illusory. A promise cannot be measured by the same standard. Nor can enforcibility of the contract depend upon whether the testator intended to circumvent section 18 or was completely indifferent in respect of it. " We do not speak of evasion, because, when the law draws a line, a case is on one side of it or the other, and if on the safe side is none the worse legally that a party has availed himself to the full of what the law permits. When an act is condemned as an evasion what is meant is that it is on the wrong side of the line indicated by the policy if not by the mere letter of the law " (*Bullen* v. *Wisconsin*, 240 U. S. 625, 630; *Newman* v. *Dore, supra,* p. 376).

Here the Legislature has drawn the line. On one side of it, one may freely sell, convey, or give away all of his property. He may deal with it as he pleases during his lifetime. On the other side of the line falls every attempt to dispose after death of the property owned up to the moment of death. On that side of the line, section 18 operates. The power to control disposition of property after death is given to a person by this State. It is exercisable only within the limits and under the conditions which the State has placed upon that power. Neither the owner of the property nor one who seeks to benefit by his exercise of that power can justly complain of their inability to evade the limitation or the conditions.

The court, therefore, holds that the widow had the right to elect to take against the will and that she is entitled to receive her one-third intestate share.

Submit decree on notice settling the account accordingly.