S. Samuel Di Falco, S.
In this accounting of the executors, the preliminary issues relate to the validity of certain claims against the estate. The questions are presented by applications for payment of the claims and by objections to the account insofar as the claims are concerned.
(a) Claims of Frances Philippe Bedona. The claimant, the former wife of the decedent, entered into a separation agreement with him on August 14,1929, under the terms of which the decedent agreed to pay her “for her support during the remainder of her natural life, Fifty ($50.00) dollars per week, beginning on the 19th day of August, 1929, it being Understood that the re-marriage of the second party [the wife], in case a divorce shall be granted to either of the parties hereto, shall not affect the support provided for in this paragraph.” The agreement provided for the creation of a trust to secure the weekly payments, but it would seem that no trust was ever set up during the decedent’s lifetime. After the execution of the agreement, the wife obtained a decree of divorce in the State of Nevada* which did not refer specifically to the separation *195 agreement, but contained identical provisions for support and maintenance.
The claimant alleges that the decedent made payments to her on account of his obligation, but that the payments were irregular and that as of March 3, 1960, the arrears amounted to $27,471.24, with interest, bringing the total to $37,575.74. The decedent died on July 5, 1959. Under the terms of his will his residuary estate is set up in trust, with direction to his trustees to pay out of income the sum of $200 monthly to the claimant during her lifetime. If the income is insufficient to pay that sum to her, the trustees are directed to invade principal to the extent necessary to make the monthly payment. The balance of the income is to be divided among the widow, children and grandchildren.
The first objection to the claim is based upon an alleged waiver executed by the claimant on September 16, 1959. In addition to the trust provisions in the fifth paragraph of the will, the decedent also bequeathed to the claimant the sum of $500, with the condition, however, that if she should in any way contest the probate of the will, contest the validity of any of its provisions, exercise any right to elect to take against the will, or claim any dower “ or interest whatsoever, in any of my property, this bequest to her is revoked and the property given hereunder shall become a part of my residuary estate and shall be disposed of as such.” The will further states that the legacy was ‘1 in lieu of any dower or right of dower, and any interest or claim or right of election which she may have or claim to have under the laws of the States of New York or of New Jersey ’ ’, and that the ‘ ‘ legacy shall not be paid to her unless and until she gives a suitable release to my executors and my specific legatees and devisees, waiving all such claims or rights except as to those she may have by reason of the provisions for her benefit under this will, exclusive of the said legacy herein described.”
The attorney for the executors submitted to the claimant a form of waiver and release, which, according to her undisputed testimony, he told her that she would be required to sign before she received the legacy. She signed the instrument which explicitly ratified and confirmed all of the provisions of the will and its probate and which states that she thereby does “ further waive and renounce all rights and benefits which may now be, or otherwise become, due to me pursuant to a certain agreement between myself and said decedent, dated August 14,1929, including, but not limited to, paragraphs 1 and 8 thereof, and further agree that the provisions of said Last Will and Testament shall *196 irrevocably constitute full satisfaction and discharge of all obligations due and to become due to me under said prior agreement of August 14, 1929, commencing with July 1, 1959.” The decedent having died on July 5,1959, it was obviously the intention of the parties to agree that the provisions of the fifth paragraph of the will for creation of a trust for payment of the future installments would constitute acceptable fulfillment of the terms of the separation agreement for all future payments.
The widow of the decedent contends that the portion of the text reading: “I do hereby further waive and renounce all rights and benefits which may now be, or otherwise become, due to me pursuant to a certain agreement between myself and said decedent, dated August 14, 1929 ” was a clear waiver of any arrears that had accrued prior to the death of the decedent, and that the remainder of the text quoted above, was intended to relate to installments accruing after the death of the decedent. Neither the executors nor their attorneys have offered any evidence with respect to the preparation or execution of the waiver, but they disclaim in their brief any intention of barring sums already accrued.
The instrument of waiver should be read in connection with the requirement of the will for the execution of such waiver. In order to qualify for the general legacy, the claimant was required to comply with all of the conditions stated in the third paragraph of the will, that is, that she did not ‘ ‘ in any way contest the probate of this Last Will and Testament, with a view to avoid, annul or question the validity of any of the provisions ”, and that she would not exercise any right to elect to take against the will, or claim ‘ ‘ any dower, right of dower or interest whatsoever, in any of [testator’s] property.” She was required to execute a suitable release ‘ ‘ waiving all such claims or rights ” except as to those she might have under the trust referred to hereinabove. (Emphasis added.) It seems to the court that all that the will required was that the claimant surrender any rights which she might have as spouse in the event the decree of divorce was not valid, that she accept the terms of the will and not seek to avoid, annul or question their validity. The will was executed on July 1, 1959, long after the divorce and after the decedent’s own remarriage. He must have been aware that his former wife would not have any right of election to take against his will unless the divorce were invalid. He stated in the fifth paragraph of his will that it was his purpose to fulfill his obligations to his former wife pursuant to the separation agreement. What she was giving up outside the separation agreement was inconsequential, namely, rights which *197 did not really exist at all. What she was giving np under the agreement was the difference between $50 a week and $200 a month, but in return she was getting an assurance of full payment which she never enjoyed theretofore. In return for these waivers, she received a relatively small legacy.
The will did not require the claimant to surrender any rights to accrued payments which she might have. Insofar as that agreement was concerned, the will spoke prospectively and in terms of fulfillment of obligations thereunder. The claimant would be justified in reading the instrument to mean that beginning July 1, 1959, she gave up all rights which she had under the agreement to receive $50 a week so long as she lived and in place of the provisions in the agreement she accepted the payments provided for in the decedent’s will. There is nothing said in the instrument about the obligation to make the payments for the period prior to his death. A fair reading of the instrument would confine its operation to an acceptance of the provisions of the will and particularly of the provisions relating to future payments for her support. If it had been the intention of the executors to go beyond the requirements of the will and to seek a release of past-due installments, it is reasonable to assume that they would fairly have apprised the claimant of the effect of the agreement. They would not have informed her that the waiver was merely a compliance with the terms of the will with respect to the general legacy. In point of fact, the executors disclaim any secret intent to have made the waiver operative on the past-due installments.
The court, therefore, holds that the instrument of waiver does not bar the claimant from demanding payment of installments that had accrued prior to July 1,1959.
The second defense against the claim is that part of it is barred by the Statute of Limitations. It is not disputed that insofar as the claim is based upon the separation agreement, the six-year statute applies. The limitation under the New York statute is clear. (Civ. Prac. Act, § 48.) Insofar as the claim is based upon the Nevada decree, it does not appear to be disputed that the six-year statute would also apply. It appears to be agreed that the law of Nevada “bars actions upon a judgment or decree six years after the cause of action accrues.” (Miller v. Miller, 122 F. 2d 209, 211.)
Where a contract provides for payment of a sum of money in specified installments, the Statute of Limitations runs against each installment as it becomes due and payable. (6 Williston, Contracts [Rev. ed.], pp. 5680-5681; Haimes v. Schonwit, 268 App. Div. 652, 655, affd. 295 N. Y. 577; Sommer v. Sommer, 94 *198 N. Y. S. 2d 23, 25, affd. 277 App. Div. 998; Matter of Sanchez, 58 N. Y. S. 2d 230, 236; True v. Brainard, 134 Misc. 70.) The distinction between those cases in which the statute runs against each installment and those where the later payments take the entire balance out of the operation of the statute, is based upon the nature of the obligation. If the claim is upon an entire account so that claimant could have maintained only a single action against the decedent upon the entire claim, a payment upon the balance due will take the case out of the operation of the statute. (Smith v. Velie, 60 N. Y. 106, 111; Denise v. Denise, 110 N. Y. 562, 567.) Where, however, the obligation was to pay money in installments so that a separate cause of action arises on each installment, the statute runs separately against each. (Williston, Contracts, supra.) Here there can be no doubt that the obligation was such that the claimant could maintain a separate action on the installments.
The claimant’s argument that the will constitutes a sufficient acknowledgment to take the case out of the operation of the statute, is without merit. Her further argument that the decedent might have been outside the State during all or part of the period, is not available to her. That issue was not raised by any pleading, nor was it presented at the hearing. No proof was produced by the claimant. The estate was not even advised that such a question was raised. The question is not, therefore, properly before the court.
The widow raised the defense of payment, acquiescence and estoppel. No proof was offered in support of any of the defenses. The claim is based principally upon the written agreement. The decedent not only recognized the validity of the agreement in his will, but he explicitly stated that he intended to discharge his obligations under it.
The court, therefore, holds that the claimant is barred from recovery of any installment that became due prior to July 5, 1953. The claimant is entitled to recovery of the installments that became due thereafter up to July 1, 1959. There appears to be no dispute with respect to the amount of the arrears.
In her brief and in her bill of particulars, the claimant demands interest at the rate of 7% per annum on unpaid installments, but no evidence was offered at the hearing on this point. “ The rate of interest allowed as part of the damages for the breach of a contract is determined by the law of the place of performance ” (Restatement, Conflict of Laws, § 418). Where a contract does not specify a place of payment or performance, it is ordinarily regarded as payable or to be performed at the place where made. (2 Beale, Conflict of Laws, p. 1337.) The *199 separation agreement does not specify any place of performance. It states the decedent’s residence to he in New York and his wife’s at Reno, Nevada. She did not retain that residence for all time and unquestionably the contract did not contemplate payment in Nevada after her change of residence. No proof of her length of stay there was offered, and no proof respecting her later domicile. The contract did require the setting up of a trust with a corporate fiduciary in New York City, for the purpose of securing the payment, and it provided for payment by the trustee in the event of a default by the husband. Because of a lack of proof respecting the place of performance of the contract and because of failure to prove any foreign law relating to rate of interest, the claimant is entitled to interest at the legal rate in this State.
The application by the claimant to set aside the waiver is denied. No legal or equitable ground for setting aside the waiver has been brought to the attention of the court. Her claim is that she was anxious to receive payment of the general legacy and was willing to sign the instrument to expedite such payment. The instrument plainly and clearly expressed her intention to accept the provisions of the will in full satisfaction and discharge of the decedent’s obligation under the contract for the period beginning July 1, 1959. The waiver carried out the conditions which the will specified. She must have understood the plain language of the instrument and she accepted the consideration upon which the waiver was conditioned.
In view of the court’s ruling upon the effect of the waiver on the claim for installments accruing after death, there is no need for determining the contingent value of the claim, except in the contingency hereinafter mentioned in connection with the widow’s election.
Claims of Samuel C. Cutler: The personal claim of Samuel 0. Cutler, one of the two accounting executors, for recovery of money loaned to the decedent, is allowed in the sum of $143,-469.84. All of the parties have examined the books and records of the decedent and the supporting data, and all concede the validity and enforcibility of this claim.
The two contingent claims of the coexecutor are based upon a written agreement made by the claimant, the decedent and two corporations wholly owned by the decedent, whereby the claimant agreed to render services to the two corporations. The agreement is dated June 2, 1950, and by its terms was retroactive to January 1, 1949 and is to continue “ for three full calendar years after all indebtedness, now due or which may become due shall have been paid to [Mr. Cutler].” That indebt *200 edness has not yet been paid bnt will be paid in the course of this accounting proceeding. The decedent guaranteed the faithful performance of the contract by the two corporations.
That part of the contingent claim which is based upon estimated compensation for three years following the satisfaction of all loans, is premature. The claimant has continued in the employment and no question is raised as to payment of compensation for services rendered. The only question that has any present vitality is the amount that the executors should retain to meet the claim on the decedent’s guarantee, if the corporations should breach the contract and if they should lack the funds to pay damages for the breach. There is no doubt that the claimant has a contingent claim against the estate. In such case there can be no distribution of the assets of the estate without reservation “ of such estate assets as the surrogate shall determine to be adequate to pay such contingent or unliquidated claim when the amount thereof shall become due and payable. In fixing the amount to be reserved for the payment of the contingent claim the surrogate may determine the value of any security or collateral to which the creditor may resort for the payment of the debt and may thereafter direct the reservation if necessary of estate assets sufficient to make up the difference between the value of such security or collateral and the amount necessary to pay the contingent or unliquated claim.” (Surrogate’s Ct. Act, § 207.)
Under the circumstances presently appearing, there is no need for the court to fix any amount to be held by the executors to pay the contingent claim. It appears that: (1) the corporations are still actively in business and the claimant is still employed and regularly paid by them; (2) the obligations are primarily the obligations of the corporations, the compensation is based upon a percentage of the annual net earnings of the corporation, the claimant is the general manager of the corporations, an officer and director, and is thus in a position to see that his compensation is paid or provided for; (3) the stock of the corporations is wholly owned by the estate and the claimant being one of the two executors is in such a position that the estate cannot do anything to prejudice his interests without his knowledge; (4) the entire estate, except for legacies of comparatively small value, is set up in trust, so that there will be no actual distribution of the major assets until sufficient time has expired for determining the full value of the claim. The claimant is thus in a position where he is adequately protected at the present time, and he can further apply to this court for relief if conditions should materially change.
*201 This court cannot decide what the claimant’s right would he under a variety of supposed fact patterns. Such suppositions are purely academic at this time. If the contract is not faithfully carried out, and if the claimant has a basis for recovery against the corporations and the estate, future application can be made to this court in the light of the actualities at that time. Inasmuch as the claimant is to be paid only out of net earnings, there is no danger that the primary source of the payment will be dissipated without his knowledge.
It seems to be the view of all parties that some of the corporate stock will be required to be sold in order to pay claims, or that some arrangement must be made to obtain additional cash for that purpose. In order that arrangements can be made that are satisfactory to all parties, the question is presented whether the claimant is entitled to compensation based upon the sale of capital assets. The claimant has filed a contingent claim for his share of profit from the sale of capital assets of both corporations. On the supposition that all of the assets of both corporations will be sold by the estate, the claimant seeks recovery of $112,217.72, representing his share of the anticipated profits that would be realized if the entire capital assets of both corporations were sold at their value as appraised for estate purposes. Objections have been filed to that contingent claim.
For his services as general manager of the corporations, one of the corporations agreed to pay him 50% of its “ Annual Net Earnings ” and the other corporation agreed to pay him 33%% of its “ Annual Net Earnings ”. The term “ Annual Net Earnings ” is defined in the agreement to mean earnings after deduction of all costs, charges and expenses but before deduction of income taxes, official salaries and personal drawings. It is stated, however, that the term 1 ‘ shall include profits from all sources including the sale of Capital Assets but shall be after deducting the accrual for interest on [claimant’s] loans.” The claimant contends that this text means that he is entitled to the stated proportion of the difference between the proceeds of sale of the corporations and the cost or other basis of the capital assets, including the proportionate share of the good will of the corporations.
The annual compensation of the claimant for his services as general manager and for the other services described in the written agreement was to be based upon the net amount earned each year by the corporations. The annual net earnings of the corporations were defined to mean ‘ ‘ profits from all sources ’ We must remember that the term being defined is “ annual net earnings ” and the profits referred to must be the annual profits. *202 It was patently the intent of the parties to include not only ‘1 earnings ’ ’ in the strict sense of the word, but also the annual profit from any source including the profit that would arise in the regular course of business from the sale or exchange of a capital asset. If, in the regular course of business of the corporations, a capital asset is exchanged or sold at a profit, the profit from that source was to be included in the annual net earnings, upon which the annual compensation of the claimant would be based. There was no intention to give the claimant an interest in the capital of the corporation itself or to give him a share in the capital gains resulting from a sale of all of the capital assets or from a dissolution of the corporation. The court, therefore, construes the contract as meaning that the annual compensation of the claimant is to be based upon the annual net earnings of the corporations, including proceeds from the sale of such capital assets as are sold by the corporations in the regular course of business.
The court holds that the claimant is not entitled to share in the proceeds of sale of all of the capital assets of the corporations in the event that it becomes necessary to dispose of all of the capital assets or to discontinue business. Inasmuch as there has been no sale of any or all of the corporate assets, the court cannot make a definitive ruling upon this contingent claim, but can give only such instructions as are possible under present circumstances. For the reasons stated above, and for the reasons stated in connection with the claim for three-year salary, the court is of the view that no amount need be ear-marked at this time to meet this portion of the contingent claim.
The claim that the entire contract is illegal and unenforcible is without merit. It is not contended that the contract had any illegal purpose or that its objectives were to be achieved by any illegal means. The sole claim is that in connection with the application for a license, there was a failure to disclose information required by law (Alcoholic Beverage Control Law, § 110). From a reading of the statute and of the application form, it is not at all clear that there has been any failure to comply with the statute. The form of application requires information respecting the sharing in the receipts of the business only for one who was ‘1 not an officer, director or stockholder of such corporation ” or, at least, so it can fairly be read. The claimant was not only listed as an officer of the corporation but he was the person who signed the application. His connection with the business was thus clearly stated. The form does not appear to call for any further statement of his connection with the enterprise. In any event, even if there had been a failure to disclose *203 all that the statute required, there would be, in that supposition, merely a minor wrongdoing in the course of the contract performance and such conduct would not “insulate the other party from liability for work done or goods furnished.” (McConnell v. Commonwealth Pictures Corp., 7 N Y 2d 465, 471.)
Claim of Charlotte A. Philippe. The petition and the answer of this respondent ask the court to determine the validity and effect of her right of election. It is not disputed that the notice of election was duly filed. The will sets up the residuary estate in trust, with income to be paid primarily to the former wife of decedent, the balance being divided among the widow, children and grandchildren. The trust is measured by the lives of grandchildren, and at its termination, the remainder is to be divided among the descendants of the decedent, after satisfaction of the claim of his former wife. It is not disputed that the widow has a valid right to elect to take against the will. The court holds that she is entitled to take her intestate share in accordance with section 18 of the Decedent Estate Law.
The widow claims that the provisions in the will for the former wife of the decedent are subordinate to her right to take against the will. (Cf. Matter of Erstein, 205 Misc. 924.) It must be remembered, however, that the rights of the former wife are based upon a separation agreement. That agreement did not call for any testamentary provisions in satisfaction of payments for the period subsequent to the decedent’s death. The decedent voluntarily chose to make a testamentary provision for his former wife, and she has accepted that provision as a discharge of the decedent’s future obligations under the contract. The provisions in the will for the decedent’s former wife, standing alone, would be subject to the widow’s election just as any other general legacy would have to contribute to the elective share. The claim upon the contract, however, stands upon a different footing. Thus far the claimant has agreed to accept the trust provisions as satisfactory performance of the terms of the contract. If those provisions are substantially changed, she will not be given what she was promised when she executed the waiver, and in that case equity would require that she be permitted to enforce her original claim. The widow appears to take the position that the waiver is valid, and under such circumstances, she cannot reduce the claimant’s right to payment as provided.
The widow filed objections to the account. The first objection deals with her right of election which is discussed hereinabove. The second, third and fourth objections deal with the *204 claims of the former wife and the coexecutor. The fifth objection requests an adjustment of the valuation of the shares of stock of the estate owned corporation. That objection requires no ruling at this time. The sixth objection is withdrawn, the seventh objection is withdrawn without prejudice and the eighth objection and the claim of the objectant stated therein are withdrawn with prejudice. The ninth objection is to the failure of the executors to make equal proportionate distribution of income to all beneficiaries. The objection has not been argued, it being assumed that the executor will make equitable distribution once the interests of the parties have been adjudicated.
All of the parties are interested in preserving for the estate as much of the value of the assets as is possible. Plans for payment of the claims and for distribution of assets will be made in the light of the decision herein and of the surrounding circumstances. In paragraph 5 of Schedule L of the account, the executors request the court to direct the method of liquidation of the assets, and in objection number 4 the widow joins in that request. However, the present record is not sufficient to justify the court in giving specific directions. If it appears necessary for judicial directions respecting the liquidation of assets, appropriate application may be made therefor.
(Supplemental Opinion.)
In its prior decision the court ruled that the six-year Statute of Limitations was applicable to the claim of the former wife of the decedent, that the statute ran against each installment of alimony as it became due, and that she was, therefore, barred from recovering any installment that became due more than six years prior to the date of the decedent’s death. She now contends that she had applied each payment made by the decedent to the earliest arrears with the result that no payment had been made by the decedent for any of the last six years of his life.
The law governing applications of payments as between debtor and creditor appears to be firmly established. As expressed by Mr. Justice Story in United States v. Kirkpatrick (9 Wheat. [22 U. S.] 720, 737) the “ general doctrine is, that the debtor has a right, if he pleases, to make the appropriation of payments, if he omits it, the creditor may make it; if both omit it, the law will apply the payments, according to its own notions of justice. It is certainly too late for either party to claim a right to make an appropriation, after the controversy has arisen, and a fortiori, at the time of the trial ”, (See, also, Foss v. Riordan, 84 N. Y. S. 2d 224, 233; 40 Am. Jur., Payment, § 108 et seq.; 70 C. J. S., Payment, § 50 et seq., pp. 255-282.)
*205 The widow of the decedent claims that evidence can be produced respecting the application of certain payments made by the decedent to his former wife. She asks the opportunity to present proof of such payments. The court will, therefore, set the matter down for further hearing on this issue. If it is the intention of the petitioners to submit a decree settling the account in other respects in accordance with the prior decision of the Surrogate, the decree will reserve for determination by supplemental decree the questions relating to the claim of the former wife of the decedent.