Robert W. Bascom, S.
In this proceeding, under section 145-a of the Surrogate’s Court Act to determine the effect of the election of the widow of the testator to take her intestate share of his estate against the provisions of his last will and testament pursuant io subdivision 5 of section 18 of the Decedent Estate Law (as amd. by L. 1965, ch. 245, § 5), it appears that on December 31, 1955 decedent and his then wife, Marion P. Nicholson, being then the owners of some of the capital stock and debentures of Eddy Farms, Inc., entered into a written contract with the said wife’s father, George H. Patterson, who was then the owner, of an undivided half interest in certain real property leased to that corporation, which contract, among other things, provided that in the event the parties thereto sold their respective interests in the mentioned property, then the proceeds of such sale would be divided and distributed 60 per centum to testator and his then wife, and 40 per centum to said Patterson. Thereafter and on November 23, 1956, the three persons aforesaid entered into a written contract to sell their said properties to five purchasers for a stipulated price, payment of $220,000 of which was to be secured by a purchase-money mortgage, with interest, payable in 12 annual installments, and of which mortgage said George H. Patterson was to be a participant to the extent of $165,000. On January 29,1957, title was closed, the bond and mortgage made and was delivered by the purchasers to George H. Patterson, participating as aforesaid, and to other mortgagees participating in the balance. The said bond and mortgage was recorded at Orange County Clerk’s office in Liber 1208 of Mortgages at page 156. On September 7, 1957, testator and his then wife, Marion, entered into another contract with said Patterson which, after reciting that pursuant to the original contract of December 31, 1955, Patterson was about to assign 60% of his interest, amounting to $99,000, in the said bond and mortgage to testator and his wife, further provided that for a valuable consideration testator and his said wife agreed that if Patterson should be living 12 years from the execution of the mortgage they would, during his lifetime, thereafter maintain and support him in a certain fashion, or, in lien thereof, at Patterson’s option, to furnish him “ the *424 sum of not less than Five Hundred Dollars ($500.00) per month as long as he shall live Patterson agreed to execute a will disposing of his remaining interest in said mortgage to testator and his wife jointly, or to the survivor of them, if Patterson should die before said mortgage was paid; testator and his wife further agreed to execute a will disposing of their interest in said mortgage to Patterson should they both die before the said mortgage was paid; that the interests of testator and his wife would be that of joint tenants with right of survivorship; and, finally, that the liability of the obligation of testator and his wife to Patterson was to be 11 joint and severable, that is, the obligation to support and maintain the party of the second part (Patterson) shall be a liability of both of the. parties of the first part and the survivor of them. ’ ’ The agreement was binding on the heirs, executors, administrators and assigns of the parties. On the same date Patterson assigned to testator and his then wife, as joint tenants with right of survivorship, a 60% interest in his participating share of said bond and mortgage, retaining a $66,000 participating interest, which assignment was recorded October 22, 1957. Testator’s then wife was Patterson’s only child, and Patterson was then 74 years of age. On the last-mentioned date testator executed his will, since probated. The will, after providing for payment of debts and funeral expenses, devised and bequeathed his entire estate to his then wife, Marion P, Nicholson, she surviving him, but in the event she predeceased him, as she did, then in that event he bequeathed to the respondent George H. Patterson any and all interest that the testator might have in the aforesaid mortgage, identifying it by book and page number, “ said interest having been previously assigned to my wife and to me by George H. Patterson ”. Also, in the same event, the residue was devised and bequeathed to testator’s nephew, the petitioner here, who, together with testator’s then wife, were named as executors.
On June 10, 1958, testator’s then wife, Marion, died, and on November 26, 1960 he remarried the respondent, Janet Nicholson. There were no children of either marriage. Testator died January 10,1963, and his will of October 22, 1957, was admitted to probate April 16, 1963, which will of course makes no provision for the present widow. Letters testamentary were thereupon issued to the petitioner, and the said widow on April 20, 1963 filed her right of election to take against the will, the effect and not the validity of which is here to be determined.
Pursuant to the agreement of September 7,1957, the respondent George H. Patterson executed a will effecting a disposition of his interest in the said bond and mortgage to the testator *425 and his then wife, and the survivor of them, in the event of his death before the principal and interest thereon were paid. That will was thereafter revoked subsequent to the death of his daughter and son-in-law.
At testator’s death the unpaid principal balance of the mortgage was $57,187.42, of which his 60% interest was $34,312.45, with accrued interest of $333.60, a total of $34,646.05. The widow has settled with the executor all claims arising out of the filing of her notice of election excepting her claimed intestate share in the aforesaid mortgage, and has executed and delivered to the executor a release specifically reserving her right to her intestate share in the proceeds thereof.
The respondent Patterson contends that the legacy of the bond and mortgage is a preferred legacy, made in payment of a contractual debt, which should not be required to contribute in partial solution of the widow’s elective share by virtue of the contract of September 7, 1957, coupled with the mortgage assignment to testator, and that, as a debt, it is free of any apportionment of estate taxes; that the widow’s entire elective share must come entirely out of the residuary estate; that the obligation to support him, or, in lieu thereof, pay him $500 per month, if living, commencing January 29, 1969, is also a debt of the testator, and that, as a construction of the will is necessarily here involved to determine testator’s intent, an allowance for counsel fees from the estate under section 278 of the Surrogate’s Court Act should be made.
The executor and residuary legatee indicates he has no interest in the bond and mortgage as it either belongs entirely to Patterson, or partly to both respondents, but he too assumes that testator’s obligation to bequeath the same to Patterson is to be treated as a debt, as he sets forth in his petition that in both the Federal and State estate tax returns, not yet filed, the testator’s interest in the bond and mortgage is included both as an asset and as a debt.
The widow’s position is that section 18 of the Decedent Estate Law limits the power of the decedent to bind himself by contract to bequeath his property in a manner which deprives her of her statutory rights, and that she is entitled to have the bond and mortgage included only as an asset of the estate in determining the value of her elective share.
For at least two reasons neither the legacy of the bond and mortgage nor the obligation to create such legacy can be considered a debt, nor can George H. Patterson be considered a creditor so far as this item is concerned. The first is that section 314 of the Surrogate’s Court Act defines “ debts ” as *426 including every claim and demand upon which a judgment for a sum of money or directing the payment of money could be recovered in an action. A ‘1 creditor ’ ’ includes every person having such a claim or demand. The testator’s contract to bequeath Patterson a specific chose in action was obviously not such a claim or demand. The second reason is that Patterson takes the mortgage under the will as a legatee and not under the 1957 contract. By that contract Patterson (after reciting that he was about to assign a 60% interest in the mortgage) undertook that he would make a testamentary disposition of the remaining 40% of the mortgage to testator and his then wife, or their survivor, should Patterson’s death occur before the mortgage was fully paid. In return, testator and his then wife undertook, firstly, to support Patterson, if living, after January, 1969, and, secondly, to make a testamentary disposition in Patterson’s favor of their interest in the mortgage should they both die before its payment. The latter undertaking testator has performed exactly as agreed; the obligation is discharged. The time for performance of the former has not yet arrived.
Insofar as the mortgage is concerned, and we momentarily confine ourselves to that instrument, the contract was not an engagement to convey; it was a promise to make a testamentary disposition. The difference has significance. A breach of the obligation to make a testamentary disposition Avould not have constituted the obligee a true creditor; it would merely have given rise to a right in equity to enforce the obligation (Matter of Tannenbaum, 258 App. Div. 285, mot. for lv. to app. den. 258 App. Div. 1054 and 282 N. Y. 810; Matter of Hoyt, 174 Misc. 512; Matter of Erstein, 205 Misc. 924). Having in mind that the legatee takes under the Avill and not under the contract, he takes the legacy subject to its myriad infirmities. If he avcto to renounce the legacy and sue on the contract to recover his alleged debt, he would be in no better position. The debt Avas paid when the Avill was made.
The widoAv, on the other hand, takes against the Avill. Momentarily Ave lay the Avill aside, as though it did not exist, to compute her vested share “as in intestacy”. This share is one half after deducting her statutory exemption, decedent’s debts and the funeral and administration expenses, but before deducting estate taxes. “The widow’s interest cuts across the entire estate, subjecting each testamentary gift pro tanto to her statutory lien which is to be satisfied from the subject matter of the several gifts or by exoneration of their respective donees ” (Matter of Taliento, 9 Misc 2d 167, 168). Where the will does *427 not indicate that any preference of one legacy over another was intended, all the legacies must contribute ratably to the widow’s share by virtue of her election, whether the legacy be general, specific, or residuary (Matter of Curley, 160 Misc. 844; Matter of Topazio, 175 Misc. 132; Matter of Hurwitz, 176 Misc. 719; Matter of Ittleson, 197 Misc. 786; Matter of Corigliano, 9 Misc 2d 847; Matter of Hattan, 19 Misc 2d 501; Matter of Schilling, 42 Misc 2d 18).
The rules as to preferment of legacies of the type given for a valuable consideration, such as those in lieu of dower, in satisfaction of a debt, or where the legatee parts with some right, or valuable consideration upon acceptance of the legacy, the legatee thereby becoming a purchaser, are applied only as between persons taking under the will. They do not apply as against third persons taking against the will. The withdrawal of the widow here is analogous to a taking by a posttestamentary child against a will providing a preferred specific legacy and a residuary legacy. It was held, as early as 1836, that such a specific preferred legacy (in that case to the widow in lieu of dower) must contribute in proportion to its value at testator’s death to the share taken by the after-born child, and that general and specific legacies must contribute in the same proportion (Mitchell v. Blain, 5 Paige Ch. 588).
We discern no distinction between a talcing1 against the will by a widow under section 18 of the Decedent Estate Law and a similar taking by a posttestamentary child under section 26. Accordingly, we are impelled to the conclusion that the Patterson specific legacy must contribute proportionately to the widow’s elective share, and that the diminished value received by the legatee must be further excised by its proportionate share of the estate taxes (Matter of Kidd, 188 N. Y. 274; Matter of Howell, 255 N. Y. 211; Decedent Estate Law, § 124); also that the executor may not take credit for the legacy as a debt of the decedent.
In so concluding, we do not overlook the fact that if there can be found in the will, when read in the light of testator’s situation when it was executed, an express direction for exoneration from contribution to the elective share, such direction will be honored (Matters of Curley and Topazio, supra). There is here no such express exoneration in the will. We cannot indulge in inferences respecting the wishes of the testator.
Respondent Patterson makes the further argument that equitably he should now be entitled to receive the entire remaining balance of testator’s interest in the mortgage without contributing to the widow’s elective share, as otherwise the consideration *428 for its original assignment is, so far, ephemeral. The answer to that is that the consideration was potentially ephemeral ab initio. This consideration, aside from the promise of support after the promisee was 86 years old, was to bequeath a mortgage which was subject to diminution, disappearance, or vitiation by the length of time the testator might live in relation to the scheduled amortization, by the possibility of prepayment, permissible by its terms, by the possibility of its passing into the hands of a receiver, trustee in bankruptcy, or judgment creditor, by the possibility of its being subject to the claims of an after-born child or an after-acquired wife, and by the failure to stipulate against apportionment of estate taxes. The legacy was the price fixed by the legatee for the original assignment. Even though its value was potentially evaporative, it was the quid quo pro which he himself fixed. Moreover, we are not concerned with the relative equities between the specific and the residuary legatees. They come into play only after the widow’s withdrawal has been effected and “ the will shall be valid as to the residue remaining after the elective share * * * has been deducted ’ ’ and ‘ ‘ the terms of the will shall as far as possible remain effective ” (Decedent Estate Law, § 18, subd. 2). At that point the specific legacy has priority over the residuary legacy, whether the specific legatee be a purchaser or not, by the ordinary rules of abatement.
Turning now to the question of that part of the 1957 contract which provided for the future support of the respondent Patterson, it would appear that unquestionably this is a contingent debt of the decedent, the amount of which, when ascertainéd, would properly be deductible in determining the net estate. The said respondent has, under the contract, the option to receive board, lodging, clothing and necessary expenses resulting from illness, or, in lieu thereof, not less than $500 per month after January 29, 1969. Whether he must wait until that date to exercise the option is not now determined as it is not in issue here. He may take appropriate proceedings under section 208-b of the Surrogate’s Court Act to secure payment of this claim.
Respecting the contention that this proceeding is, in effect, in the nature of one to construe the will, it seems clear that there is no ambiguity in that document to be resolved, and no unclear expression to be interpreted. Accordingly, the application for allowance of counsel fees out of the estate must fail.
Upon the hearing, objections were interposed on behalf of the respondent, Janet Nicholson, to the receipt in evidence against her of petitioner’s Exhibits 6 and 7, being the 1955 and 1957 contracts, upon which decision was reserved. The objection is *429 sustained as to the former, but overruled as to the latter, as it bore upon the question of an indebtedness of the decedent which would be material in determining the widow’s elective share, and at that point her release had not been put in evidence.