Henry F. Werner, J.
Walter D. Dunham died testate a resident of Greene County on January 23, 1970. His will, dated November 21, 1967, was admitted to probate on February 16, 1970. His widow, Marina Dunham, who is also the designated executrix, filed with the petition for probate on February 16, 1970, a notice of election under EPTL art. 5 to take against the will. A copy of such election was served on Mary J. Dunham, the petitioner herein. Under Mr. Dunham’s will, Marina Dunham is the residuary legatee.
Paragraph Third of the will reads as follows: 1 ‘ Third: In compliance with a certain Separation Agreement dated August 9, 1967, between myself and my former wife, Mary J. Dunham, residing at 76 Wilson Avenue, Kingston, New York, I hereby give, devise and bequeath to said Mary J. Dunham, all of the stock which I might own at the time of my death, in Dunham Tunnel and Excavation Corporation, Rock Construction Corporation and Cabot Construction Corporation, to be hers absolutely.”
Paragraph 6 of the separation agreement reads as follows:
‘ ‘ The husband also agrees to make and execute a Will simultaneously with the execution of this agreement, under which he shall devise and bequeath all of the stock which he may own in the Dunham Tunnel and Excavation Corporation, Rock Construction Corporation and Cabot Construction Corporation at this time to the wife, to be hers absolutely.”
By other terms of said agreement it was .agreed that a division of jointly owned property had taken place that the husband should maintain a $40,000 life insurance policy with, the wife as beneficiary; that the husband would pay the wife $200 per week until her death or remarriage; the wife agreed to care for Florence Dunham, the decedent’s mother, if the wife survived the husband; the parties agreed to divide the proceeds of a particular mortgage; the husband agreed to assume all liabilities existing against either of them and to hold the wife harmless. The parties were represented by one attorney but a paragraph was *1031 included wherein they acknowledged that they had the right to be represented by separate and independent counsel but, nevertheless, executed the agreement freely and of their own volition. Petitioner, Mary J. Dunham, and decedent were subsequently divorced and decedent married respondent, Marina Dunham. The principal assets of the estate are the shares of Dunham Tunnel and Excavation Corporation (hereinafter called Dunham), the other assets of the estate being valued at $2,334.53.
On March 23, 1970 petitioner herein commenced an action in Supreme Court, Ulster County, and obtained an order to show cause returnable in Ulster County on April 3, 1970, in and by which she sought a temporary injunction to enjoin the holding of a special stockholders ’ meeting of Dunham Tunnel and Excavation Corporation. The complaint in this1 action is said to have sought a determination as to the effect of the election filed by Marina Dunham. The motion was adjourned to April 10, 1970, before Hon. DeFobest C. Pitt, Justice of the Supreme Court, and was decided by Justice Pitt on April 21, 1970. In and by his memorandum decision, Justice Pitt granted the motion for a temporary injunction but stated: ‘ ‘ The matter is complicated somewhat by the fact that a proceeding is presently pending before the Surrogate of Ulster (sic) County to determine the validity and effect of the Notice of Election. The determination of the issue raised in that proceeding as to whether or not the shares in question are subject to the widow’s right of election will, it appears from the factual context of matter, ultimately resolve the controversy between the parties. The present resolution of the above noted issue is well beyond the scope of this motion and improper. The same should be reserved for the determination of the Surrogate’s Court. In this regard, it is thought proper to state expressly that in no manner is this Court in any way passing upon this issue.” An order was entered upon the motion on June 15, 1970. This case is now at issue in the Ulster County Supreme Court.
On March 27, 1970, petitioner obtained from this court an order to show cause why a decree should not be made determining that the stock bequeathed under paragraph Third of the will was not subject to the election filed by Marina Dunham. This order was returnable on April 14, 1970, and was adjourned by consent for a hearing until April 28, 1970. In the interim, counsel filed briefs which indicated the need for a further hearing which was held on June 30,1970. Both parties rested at the conclusion of the latter hearing.
The respondent’s answer to the petition in this matter alleges a defense in paragraph eleventh, to the effect that another action *1032 is pending and consequently this proceeding should be dismissed.
This court takes the view that it has exclusive jurisdiction of any questions arising in connection with the validity and effect of the election filed by the widow under EPTL 5 — 1.1 (subd. [d], par. [5]).
This court further asserts full equity jurisdiction under SOPA 201 (subd. 2) as to the proceeding under EPTL 5-1.1 (subd. [d], par. [5]) and the right to determine all questions, legal or equitable arising between the parties (SOPA 201, subd. 3) so as to make a full equitable and complete disposition of this matter which the Supreme Court, by virtue of the exclusive jurisdiction conferred upon this court by EPTL 5-1.1 (subd. [d], par. [5]) could not do. Apparently, Justice Pitt was of the same opinion, from his statements quoted above.
The validity of the election filed by Marina Dunham is not in issue. The issue before this court is the effect which it will have upon the assets of the decedent and particularly the shares of “ Dunham ”, which is the owner of all the outstanding shares of Bock Construction Corporation (hereinafter called “Bock”), Cabot Construction Corporation being defunct. The decedent, at the time of his death, owned 93 shares of “ Dunham ” stock; the petitioner 92 shares; Jack Turk 5 shares and Milton Dunham 5 shares. There were, therefore, 195 shares issued and outstanding at the time of decedent’s death, and 98 shares of the stock would control the corporation. The book value of the shares of “ Dunham ” stock was $508,907 and the book value of “ Bock ” stock was $293,577 less $45,000, according to the testimony of Mr. Legg and the unaudited statements of Peat Marwick Mitchell & Co. as of December 31, 1969.
The petitioner herein is the treasurer of “Dunham ” and a member of the board of directors. She is also the owner of 92 shares of that corporation stock. As treasurer she earns $20,000 per year salary and has a car furnished to her. She also has received dividends on her shares and annual bonuses between five and ten thousand dollars. She appears to be an intelligent and competent business woman who has knowledge of the corporations ’ affairs and financial operations. On April 1, 1956, she was the owner of 50 shares of Dunham. At the time of decedent’s death she owned 92 shares, the additional 42 shares having been given to her by the decedent in the interim. Under the terms of the separation agreement, she is entitled to be paid $200 per week until her death or remarriage by the estate of decedent. The Superintendent of Insurance, based upon her life expectancy and the probability of her remarriage, has valued this *1033 claim at $138,894. This amount is not disputed by the respondent or petitioner.
Two other instruments must be mentioned in connection with the ownership of the shares. They are a restrictive stockholders’ agreement dated April 1, 1956, and an amendment thereto dated August 9, 1966, both of which were entered into by ‘1 Dunham ’ ’, the petitioner, and decedent. The original agreement made no provision for water vivos or testamentary gifts and provided that, upon the death of a stockholder, the remaining stockholders were obligated to purchase the deceased stockholder’s shares at book value. The amendment provided that the stock could be freely transferred by testamentary or inter vivos gift. Respondent, by her attorney, as executrix of the decedent’s estate, by letter offered the shares owned by the decedent to the surviving stockholders, under paragraph 2 of the original agreement, for an amount of $4,220 per share or $392,460 for the 93 shares owned by decedent. She also requested that a certificate be issued in her name as executrix if there was no acceptance of the offer.
Petitioner, by her attorney, made offers of proof on June 30, 1970, with reference to the intentions of the parties at the time the separation agreement was entered into and also as to the instructions which were given to Ward Ingalsbe, Esq., the attorney for the parties at the time the separation agreement was entered into. Both offers were rejected on the ground that they were privileged and incompetent as against the decedent and, in addition, that the intentions of the parties were expressed in the agreement which was in evidence. The arguments with respect to intention and motivation are rejected upon the reasoning of Surrogate Collins in Matter of Erstein (205 Misc. 924, 932).
The assets of decedent’s estate, other than the shares of stock, consist of:
(a) Six (6) shares Hercules Powder Co........$ 134,75
(b) Checking Acct. State of N. Y. Bank........ 1,599.78
(c) % interest in Turco Mortgage............. 600.00
Total...........................! $ 2,334.53
The liabilities consist of:
(a) Balance due of personal note to State of N. Y. Bank $ 1,500.00
(b) Contingent liability as endorser on corporate note of Dunham Tunnel & Excavation Corporation Note #3631.......... 51,062.57
*1034 (c) Contingent liability as endorser on second corp. note to same bank................ 102,000.00
(d) Liability to Dunham Tunnel & Excavation Corporation on promissory note for money borrowed from it................ 36,000.00
(e) Liability to Bock Construction Corp. on note for money borrowed................... 1,000.00
(f) Funeral bill ............................. 2,200.00
Total...........................$193,762.57
The corporate notes in the amount of $150,000 upon which decedent is guarantor have not been renewed. The corporation would be unable to pay these notes from its cash if it was called upon to do so without some delay and, if they were paid, the payment might hurt the corporation’s operations. The corporation has paid the interest on such notes. It is petitioner’s contention that these notes are not true liabilities since the corporation has sufficient assets to pay them. The corporations are presently operated by Jack Turk under a management agreement.
The decedent’s last will having been executed after August 31, 1966, the right of election is subject to the provisions of EPTL 5-1.1. .
There can be no question that Walter D. Dunham, by executing his will and making the legacy to petitioner has performed and discharged the obligation imposed upon him by paragraph 6 of the separation agreement. However, it is the public policy of this State that a man who is obligated to support his wife during his lifetime should not by his will be permitted to disinherit her. That policy is expressed in EPTL 5-1.1.
A contract to make a will and a will, when made, are encumbered by this policy of the State and the right of an individual to either contract to make a will or to make a will is thereby limited and restricted. The decedent did not make a present conveyance or transfer of the shares of stock. He made an agreement to make a will and consequently it is the finding of this court that the court reads the words ‘1 at this time ’ ’ in paragraph 6 of the separation agreement as necessarily referring back to the words “ stock which he may own ”. No intention to make a present transfer may be found in that document.
The distinction between an agreement to make a will and contracting a debt is obvious. In this case the petitioner with respect to the shares is a contract legatee. With respect to the weekly payment of $200 she is a creditor of the estate.
*1035 This court adheres to the stricter view that EPTL 5-1.1 limits the power of a married person to bind himself by contract to devise or bequeath property by will in a manner that would deprive the surviving spouse of her statutory rights. (Matter of Erstein, 205 Misc. 924, supra; Matter of Hoyt, 174 Misc. 512; Matter of Lewis, 4 Misc 2d 937.) The rights of the legatee are consequently subordinate to the election filed by the widow of the decedent herein.
While the rule is that specifically bequeathed property is the property of the legatee, this rule does not apply if the assets of the estate are insufficient to pay the debts of the estate. It similarly does not apply where the legacy is subordinate to the right of election of the surviving spouse.
It appears from the proof submitted that decedent’s estate without the value of the shares of Dunham will be unable to (a) satisfy the claim of petitioner herein for alimony under the separation agreement in the amount of $138,894, (b) satisfy any claims for New York or Federal estate taxes, (c) satisfy the contingent claims upon the notes which the decedent has guaranteed.
As the executrix of the decedent’s estate, respondent is responsible for the payment of decedent’s debts and the estate taxes. She is also responsible for the discharge of any contingent liabilities which he may have at the time of his death. The assignment of accounts receivable to the holder of the notes by the corporation does not relieve the estate of the contingent liability unless accompanied by a dicharge to the guarantor.
For the reasons stated the executrix is entitled to possession of the shares of Dunham and Rock and is entitled to have those shares transferred to her name and to vote the same for the benefit of the estate.
In view of the present financial posture of this estate there can be no doubt that some of the shares must be sold in order to satisfy the debts.
In respect of the sale, inasmuch as the corporation is closely held, only so many shares should be sold as will satisfy the debts and other obligations of the estate.
This court will entertain a petition by the executrix or the current petitioner to determine (1) the effect of the offer made by the executrix, (2) the construction of the restrictive stockholders’ agreement and the amendment thereto, and (3) the number of shares to be sold and the price thereof.
Needless to say the court in the exercise of the equitable powers granted to it by the Legislature has a legitimate interest and duty in protecting the rights of both the legatee and the *1036 widow in the proper distribution of the assets of the estate. This court therefore retains jurisdiction for the purpose of determining what the rights of the legatee and widow may be under the stockholders’ agreement and the amendment thereto. In addition the court has an interest in avoiding a multiplicity of actions between the parties before it.